IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DESI'S PIZZA, INC., et al. | : | CIVIL ACTION NO. **3:CV-01-0480** |
| | : | |
| Plaintiffs, | : | |
| | : | (Magistrate Judge Blewitt) |
| v. | : | |
| | : | |
| CITY OF WILKES-BARRE, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Before this Court is  the Summary Judgment Motion of the Defendants pursuant to Federal Rule of Civil Procedure 56.[1]  **(Doc. 68)**.  Defendants' Motion has been briefed by the parties and exhibits have  been submitted.[2]  (Docs. 79, 80, 81, 103).

**I. Background**.

The  Plaintiffs  are  proceeding  through  counsel  and  have  paid  the  filing  fee.   Named  as Defendants in the Amended Complaint are: City of Wilkes-Barre ("W-B"); Thomas D. "McGroaty" (sic), Mayor of Wilkes-Barre;[3] Anthony George, W-B Chief of Police; and David W. Lupas, Luzerne

---

[1]  The parties consented to proceed before the  undersigned pursuant to 28 U.S.C. § 636(c).  (Doc. 44).

[2]  To the extent that the Defendants' Motion is also styled as one for judgment on the pleadings under Rule 12(c) (Doc. 87, pp. 11-12),  we will apply the standard for Rule 12(c) to the Plaintiffs' statutory discrimination claims under 42 U.S.C. §§ 1981 and 1982.  We will consider the Defendants' motion as one for summary judgment under Rule 56 with respect to the Plaintiffs' equal protection claim since discovery has been completed, and we consider all of the exhibits submitted by the parties with respect to the stated claim.

[3]  The Plaintiffs' Amended Complaint incorrectly spells the name of Defendant Mayor McGroarty as "McGroaty".  (Doc. 37, pp. 1-2).

County District Attorney.[4]   (Doc. 37, p. 2).  The Plaintiffs do not specify if they sue all of the individual Defendants in their individual and official capacities.  (Doc. 37, p. 2).  This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and § 1331.  The Plaintiffs request compensatory and punitive damages, as well as injunctive relief.   (Doc. 37, p. 14).

The Plaintiffs, Francis and Martin Desiderio, the owners and operators of Desi's Pizza in Wilkes-Barre, Pennsylvania, have alleged that the Defendants, in ordering the Plaintiffs  to close their restaurant/bar (Desi's Pizza), have violated their civil rights under 42 U.S.C. § 1983.  (*Id*. at ¶ 82.).  Specifically, the Plaintiffs claim that the Defendants violated their rights to equal protection of the laws guaranteed by the Fourteenth Amendment, by singling out the Plaintiffs' establishment and treating it more harshly than other establishments similarly situated.  The Plaintiffs also claim that the Defendants' actions were done in retaliation against the Plaintiffs for welcoming Black and Latino persons as patrons in their establishments.  (*Id*. at ¶ 84.).  Further, the Plaintiffs claim that the Defendants have violated their substantive and procedural due process rights.  (Doc. 37, pp. 12-13, ¶ 86.-90.).

As stated by the Third Circuit in *Desi's Pizza, Inc. v . City of Wilkes-Barre*, 321 F. 3d 411, 417 (3d Cir. 2003),[5] the Plaintiffs assert four causes of actions, namely:

> First, the complaint avers that the defendants' act of "singling out [the plaintiffs'] establishments" and "treating them in a far harsher manner than other businesses" violated the Equal Protection Clause. App. at 46. Second, the

---

[4]  The individual Defendants, as will be discussed, are all  state actors.   Also, as will be discussed, Defendant Lupas was dismissed from this action.

[5]  The Plaintiffs previously appealed the District Court's decision which essentially found the Plaintiff's claims in this case precluded by the *Rooker-Feldman* doctrine.

complaint claims that "inasmuch as defendants['] actions were done in retaliation for welcoming African-Americans and Latinos as patrons at their establishments and were done as part of a custom and policy designed to drive such persons out of Wilkes-Barre and the neighboring communities," the defendants' actions violated 42 U.S.C. §§ 1981, 1982, and 1985 and the Fourteenth Amendment. *Id.* Third, the complaint maintains that the defendants violated the plaintiffs' due process rights under the Fifth and Fourteenth Amendments. The complaint alleges that the defendants (a) "perverted and abused the police powers invested in them for the purpose of destroying plaintiffs and their businesses without legally valid justification"; (b) "acted so as to stigmatize and harass plaintiffs without any lawful basis and without due regard to the truth of statements made about plaintiffs"; and (c) "acted to wrongfully deprive plaintiffs of the use of their property and the right to pursue legitimate commercial endeavors." *Id.* at 46-47. Finally, the complaint asserts state-law claims of abuse of process, tortious interference with business relationships, trade disparagement, and defamation. The complaint seeks compensatory and punitive damages and requests an injunction preventing the defendants from engaging in "further efforts to harass, disparage and destroy [the plaintiffs'] businesses and directing [the defendants] to allow Desi's Pizza to continue operating." *Id.* at 47.[6]

The Plaintiffs, in their amended complaint, filed after the Third Circuit's decision, clarified their procedural due process claim, stating, "Plaintiffs state a claim against Defendants under the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution inasmuch as Defendants obtained an *ex parte* order shutting Desi's down without an opportunity for Plaintiffs to be heard despite the fact that no emergency existed that required such precipitous action." (Doc. 37, p. 13, ¶ 90.)

Count Two of the Plaintiffs' Original Complaint, as the Third Circuit Court stated, raised claims pursuant to 42 U.S.C. §1981, §1982 and § 1985.[7] (Doc. 36, p. 8). The Plaintiffs allege

---

[6] We note that the Third Circuit's decision, *Desi's Pizza*, can also be found at Doc. 36.

[7] Plaintiff is complaining about conduct which all transpired in Luzerne County, Pennsylvania, located in the Middle District of Pennsylvania. All of the parties are located in the Middle District of Pennsylvania. (Doc. 37). Thus, venue of this case is proper in the Middle District of Pennsylvania. Under 28 U.S.C. § 1391(b)(1) and (2),

that the actions of the Defendants, "were done in retaliation for welcoming African-Americans and Latinos as patrons at their establishments and were done as part of a custom and policy designed to drive such persons out of Wilkes-Barre and the neighboring communities." (*Id.*). The Third Circuit noted it assumed that the Plaintiffs were alleging that the Defendants' conduct violated § 1985(3) despite the Plaintiffs' failure to specify this subsection of § 1985. (*Id.*, pp-21-22, n. 1). The Court stated that §1985(3) "prohibits conspiracies to deprive persons of certain Constitutional rights,  and is thus the most likely basis for the Plaintiffs' Section 1985(3) claim." (*Id.*)(Citations omitted).

In their Amended Complaint, which, as mentioned, was filed after the remand from the Third Circuit,  the Plaintiffs' Count Two, brought under §§ 1981, 1982, 1983 and 1985, and the Fourteenth Amendment, alleged that, "Defendants [sic] actions were done in retaliation against Plaintiffs for welcoming Black and Latino persons as patrons at their establishments and were done as part of a custom and policy designed to drive such persons out of Wilkes-Barre and the neighboring communities."[8] (Doc. 37, p. 12, ¶ 84.).

In Counts Three and Four of the Amended Complaint, the Plaintiffs assert procedural and substantive due process claims under the Fifth and Fourteenth Amendments.  (Doc. 37,p. 12-13).  Count Five contains state law claims for abuse of process, tortious interference  with business relationships, trade disparagement, and defamation.  (*Id.* at 13).  Count Six asserts a

venue is proper in the Middle District of Pennsylvania, since this is the judicial district where all of the Defendants reside and "in which a substantial part of the events or omissions giving rise to the claim occurred."

[8] The Plaintiffs again failed to specify what subsection of § 1985 upon which  they were relying, and we assume, as did the Third Circuit, that they are basing their claim under §1985(3).

claim for attorneys' fees under § 1988.[9]  (*Id*. at 14).

The Defendants argue in their brief in support of their Motion for Summary Judgment that the Plaintiffs' claims in Count Two should be dismissed in its entirety for failure to state a claim. (Doc. 87, pp. 23-25).   The Defendants, in their reply  brief, correctly state that the Plaintiffs' opposition brief did not respond to their arguments as to the dismissal of Counts Two, Three, Four, Five, and Six of the Amended Complaint.  (Doc. 105, p. 1).  We concur with the Defendants that the Plaintiffs only argue in their opposition Brief that there exists disputed material facts with respect to their equal protection claim, Count One of the Amended Complaint.  (Doc. 87, p. 12, ¶ 82.).  The Plaintiffs also argue against the Defendants'  assertions that they are entitled to qualified immunity, that they did not prove damages, that there was not a custom or policy, and that collateral estoppel and res judicata principles preclude the Plaintiffs' claims.[10]  (Doc. 104, p. 1).

Thus, we deem the Plaintiffs as not opposing the stated arguments of the Defendants as to the dismissal of Counts Two, Three, Four and  Five pursuant to Local Rule 7.6, M.D. Pa. We agree with Defendants (Doc. 105, p. 1) and  deem the Plaintiffs as opposing only the Defendants' motion with respect to their equal protection claim, Count One, as well as their *Monell* claim against the Defendant city of Wilkes-Barre.

---

[9]  If the Plaintiffs prevails in their § 1983 claim, they are entitled to attorneys' fees under § 1988.  42 U.S.C. § 1988.

[10]  While the Plaintiffs also argued that Defendant Lupas, DA, was not entitled to absolute immunity, this Defendant, as noted, has been dismissed from this action.

Moreover, Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for "failure of the plaintiff to *prosecute* or comply with these rules or *order of court*, . . ." (emphasis added). In the instant case, the Plaintiffs have failed to prosecute their action with respect to Counts Two, Three, Four, and Five by their failure to address the Defendants' motion with respect to these claims in their opposition brief, Doc. 104.

The Defendants, in their main support brief, as indicated, have stated both the standard for judgment on the pleadings and for summary judgment. (Doc. 87, pp. 11-13). We apply the judgment on the pleadings standard with respect to the Defendants' unopposed legal arguments that the Plaintiffs' Counts Two, Three, Four and Five of the Amended Complaint fail to state claims.

As stated, the Plaintiffs raise claims under §§ 1981, 1982, 1983 and 1985(3), as well as Pennsylvania state law claims (Counts Two-Five). As relief, the Plaintiffs request monetary and punitive damages, as well as injunctive relief. (Doc. 37, p. 14).

Herein, the Defendants have moved for Judgment on the Pleadings under Fed.R.Civ.P. 12(c) and for Summary Judgment pursuant to F.R.C.P. 56. (Doc. 68). The Defendants' dispositive motion is ripe for disposition.

## II. Procedural History.

On March 19, 2001, the Plaintiffs filed a complaint against the Defendants. (Doc. 1). On May 5, 2001, the Defendants filed a motion to dismiss the Plaintiffs' claims, and Defendant Lupas filed a partial motion to dismiss. (Doc. 10 & Doc. 9). As stated, the District Court

dismissed the Plaintiffs' complaint in its entirety under the *Rooker-Feldman* doctrine, holding

that the Plaintiffs' federal claims were inextricably intertwined with the state court decision.

(Doc. 20, pp. 9-10).  On February 4, 2002, the Plaintiffs filed notice of appeal from the District

Court's Order.  (Doc. 22).  The Third Circuit, in *Desi's Pizza, Inc., supra*, vacated in part and

remanded in part the District Court's Order.  (Doc. 36, p. 3).  The Third Circuit held:

> We hold that the *Rooker-Feldman* doctrine does not bar the Plaintiffs' equal
> protection claim, their federal statutory discrimination claims, and their
> substantive due process claim.  We also conclude that we cannot determine from
> the face of the complaint whether the Plaintiffs' procedural due process claim is
> inextricably intertwined with the state court decision, and we therefore vacate the
> order dismissing that claim and remand for the Plaintiffs to set out the claim with
> sufficient detail to enable the District Court to determine whether it [the due
> process claim] is inextricably intertwined with the state court decision.

(*Id*.).

After the case was remanded to the District Court, the parties agreed to proceed before a

Magistrate Judge and the case was reassigned to the undersigned on September 10, 2003.

(Doc. 44).  On May 13, 2003, the Plaintiffs filed an Amended Complaint.  (Doc. 37).  Discovery

ensued.  (Docs. 48-67).  Upon review of the record following remand, as discussed above, the

Plaintiffs amended their procedural due process claim and more specifically stated this claim.

(Doc. 37, p. 13, ¶ 90.).

In their Amended Complaint, the Plaintiffs aver as follows with respect to their due

process claim:

> 88.  No emergency conditions existed that required the closing of Desi's by *ex
> parte* order.
> 89.  The summary closing of Desi's by *ex parte* order caused Plaintiffs great
> hardship, loss of income, loss of reputation, emotional trauma and made the

defense of the subsequent proceeding more difficult.

90. Plaintiffs state claim against Defendants under the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution inasmuch as Defendants obtained an *ex parte* order shutting Desi's down without an opportunity for Plaintiffs to be heard despite the fact that no emergency existed that required such precipitous action.

(*Id*.).

On September 26, 2005, the Defendants filed a Motion for Summary Judgment. (Doc. 68). On May 8, 2006, the Court issued an Order granting the unopposed Motion to Dismiss Defendant David Lupas. (Doc. 108).

## III. Motion for Judgment on the Pleadings Standard.

As the Defendants state (Doc. 87, p. 11), a Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion. *Haddock v. Christos*, 866 F.Supp. 170, 172-173 (M.D. Pa. 1994). When evaluating a pleading for failure to state a claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

8

**IV. Motion for Summary Judgment Standard of Review.**

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*.  The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id., quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

**V. Undisputed Material Facts.**

On September 26, 2005, the Defendants filed a Statement of Material Facts ("SMF"), in support of their Summary Judgment Motion, as required by Local Rule 56.1, M.D. Pa. (Doc. 69). On November 14, 2005, the Plaintiffs properly filed a response to the Defendants' SMF. (Doc. 102). The parties agree upon several material facts in this case. We shall not repeat the SMF's to which both parties agree, and incorporate them herein by reference. (Docs. 69 & 102, ¶'s 1., 3.-13., 26., 27., 30., 33., 34.).

We shall now discuss the challenged SMF's.[11]

The Plaintiffs dispute ¶ 2. of the Defendants' SMF, which points out that in a span of 6 years, there were 130 police reports of incidents occurring in or around Desi's Pizza. (Doc. 69, p. 2, ¶ 2.). A review of the record indicates that Defendants based this fact on the decision of the Court of Common Pleas of Luzerne County, regarding Desi's Pizza's status as a nuisance bar. (*Id*.). In *Commonwealth v. Desiderio et al.*, C.C.P. Luzerne, No. 19-E of 2001, March 28, 2001, the District Attorney of Wilkes-Barre moved to enjoin Desi's Pizza from operating. The Court, in granting the injunction,  stated:

> Through credible witnesses, the Commonwealth has established and proven by clear and convincing evidence, the following:
>
> 37. From 1995 to February, 2001, Wilkes-Barre Police compiled one hundred thirty (130) reports of incidents occurring in or around DESI's. Complaints included thefts, disorderly conduct, vandalism, drunks, assaults, burglary, robbery, drug violations and miscellaneous calls. (footnote omitted).

---

[11] We note our displeasure with the manner in which the Plaintiffs have responded to Defendants' SMF by not using complete sentences , and by not referencing the specific  document numbers for much of the evidence they rely upon to dispute Defendants' facts.

38.   Complaints of such conduct have steadily escalated: (chart omitted).

(Doc. 79, Ex. 1, p. 7, 11-12).

The Plaintiffs attempt to dispute this fact by generally pointing to all of the police reports involved in this matter without specifically citing to the facts contained therein which they find contradictory.[12]  (Doc. 102, p. 2, ¶ 2.).  However, there are over 300 pages in the police reports to which Plaintiffs refer, and without Plaintiffs' citation to the specific  reports they contend dispute Defendants' SMF  ¶ 2., the Court simply will not perform Plaintiffs' obligation of finding these reports.  Thus, the Court will not  guess upon which reports Plaintiffs rely.  In any event, we find Defendants' SMF ¶ 2. to be properly supported by the record as indicated above, and we find that it has not been controverted by the Plaintiffs.

As the Plaintiffs state, ¶ 14. - ¶ 17. of the Defendants' SMF are legal conclusions.  (Doc. 102, pp. 1-2, ¶'s 14.-17.).  Therefore, we do not accept them as material facts.

The Plaintiffs dispute ¶ 18. of the Defendants' SMF, which states that the Defendants did not have knowledge of the racial makeup of the customers of Desi's Pizza.  (Doc. 102, p. 2, ¶ 18.).  The Plaintiffs cite the Deposition of Chief George, which we do not find to contradict the Defendants' fact.  (Doc. 80, Ex. 4, p. 30, 42, 102-03)   Instead, the testimony cited by the Plaintiffs shows that Chief George knew the racial makeup of an establishment called the

_____

[12]  The Court, in *Richardson-Freeman v. Norristown Area School District*, encountered a similar problem concerning its Plaintiff's brief.  The Court noted, "[i]t is thus Plaintiff's responsibility to point to evidence in the record that demonstrates genuine issues of material fact for trial.  Plaintiff's brief, however, fails to point specifically to evidence in the record, either by summary or by specific reference.... Accordingly, notwithstanding Plaintiff's failure to assist in the inquiry, the Court has considered carefully all of the relevant evidence contained in Plaintiff's submissions."  2001 WL 238544, at * 2 (E.D. Pa., March 12, 2001).

"White House," but did not know the racial makeup of the customers of Desi's Pizza. (*Id.*).
The Plaintiffs further cited to the Declaration of Francis Desiderio. The statements cited to in
the Declaration of Francis Desiderio do not show that the Defendants knew the racial makeup
of Desi's Pizza, but instead reveal that Chief George walked through the neighborhood
frequently during the time Desi's Pizza was open. (Doc. 103, unnumbered pp. 4-5, ¶'s 32.-33.).

The Plaintiffs also cited to the Declaration of Martin Desiderio concerning the knowledge
of the Defendants in regards to the racial makeup of the customers of Desi's Pizza. The
statements cited to in the Declaration of Martin Desiderio do not show that the Defendants
knew the racial makeup of Desi's Pizza's customers, but rather show that the neighborhood in
general knew the racial makeup of the customers. (*Id.* at unnumbered p. 11, ¶ 13.). Further,
the Plaintiffs point to the Declaration of Ronald Felton to support their dispute of Defendants'
SMF, ¶ 18. (Doc. 102, p. 2, ¶ 18.). The statements cited to in the Declaration of Ronald Felton
do not show that the Defendants had knowledge of the racial makeup of the customers of
Desi's Pizza, but instead expressed Mr. Felton's concern regarding the attitude of the
surrounding community about minorities. (Doc. 103, unnumbered p. 15, ¶'s 9.-10.). Contrary
to Local Rule 56.1, the Plaintiffs did not provide the docket numbers, exhibit numbers or page
numbers of the stated Declarations.[13]

The Plaintiffs deny ¶ 19. of the Defendants' SMF. (Doc. 102, p. 2, ¶ 19.). The
Defendants claim that the only evidence of record is that the racial demographics of Wilkes-

---

[13] See *supra* note 11.

Barre have not changed for the last twenty years.  (Doc. 69, p. 6, ¶ 19.).  The Defendants refer

to the statements made in the Depositions of Mayor McGroarty and Chief George, which

indicate that neither individual noticed a change in the racial demographic of Wilkes-Barre

during the 1990s.  (Doc. 80, Ex. 4, p. 27 & Ex. 7, pp. 94-95).  To dispute this evidence, the

Plaintiffs point to the Declaration of Ronald Felton.[14]  (Doc. 102, p. 2, ¶ 19.).  Mr. Felton stated

that the 2000 census shows that the number of Black persons living in Wilkes-Barre has

increased by 58% in the past ten years and the Latino population has doubled during the same

period.  (Doc. 103, unnumbered pp. 14-15, ¶'s 2.-4.).[15]

The Plaintiffs dispute ¶ 20. of the Defendants' SMF.  (Doc. 102, p. 2, ¶ 20.).  In ¶ 20., the

Defendants aver that none of the Defendants knew of any instances of racial discrimination

against the Plaintiffs or their customers.  (Doc. 69, p. 6, ¶ 20.).  In his Deposition, Chief George

claimed that he did not know of instances of racial discrimination against the Plaintiffs or their

customers.  (Doc. 80, Ex. 7, p. 301).  To dispute this fact, the Plaintiffs cite to a Declaration of

Francis Desiderio.[16]  (Doc. 102, p. 2, ¶ 20.).  In his Declaration, Francis Desiderio stated:

> 23.  In or about July, 2000, Stanley, who owned the transmission shop around the
> corner from Desi's commented to me on several occasions how he was
> concerned that "niggers" might break his windows, that he can't stand them and

---

[14]  See *supra* note 11.

[15]  Although Felton's Declaration avers that the African-American and Latino population has increased significantly in the past ten years, which may go to show an impetus for having a policy against minorities, his declaration does not support the Plaintiffs' claim that the city of Wilkes-Barre had a custom or policy to drive out minorities.  Thus, while Felton's Declaration expresses his concern about the racial conflict in Wilkes-Barre due to the increase in the minority population, we find it does not support the Plaintiffs' *Monell* claim against the Defendant City of Wilkes-Barre.

[16]  See *supra* note 11.

doesn't want them around his shop.

24.   Another neighbor was a man by the name of Tony Woronko.

25.   In a conversation back in 1992, when we opened the sports bar, he said to me, "I don't want a nigger bar there."  He then made reference to a bar called Soul, Incorporated, no longer in business, which he described as a "nigger bar," adding that he did not want another one there.

26.   In the summer of 2000, when I was getting the mail, Woronko yelled across the street, "Hey nigger lover."

27.   That same summer I had a conversation with a Ms. Petyak who also lives across the street; she referenced Soul Incorporated and said that she didn't want another Black bar here.

28.   Another neighbor, Simir Maroo, who lived behind Desi's told me in July 2000 that if we didn't change the color of our clientele we were going to be shut down.

(Doc. 103, unnumbered pp. 3-4, ¶'s 23.-28.).  However, the statements cited by the Plaintiffs demonstrate the knowledge of Francis Desiderio concerning the racial discrimination against himself and his business by his neighbors.  (*Id*. at ¶'s 23.-32.).  The statements do not demonstrate the knowledge of the Defendants concerning any racial discrimination against Desi's Pizza or their customers.  Also the comments of Francis Desiderio's named and unnamed neighbors cannot be attributed to the Defendants in this case.  We also find these alleged comments of the neighbors to be hearsay, which should not be considered in a summary judgment motion.  See *Paul J. Muller Associates, Inc. v. TransAmerica Occidental Life Ins. Co.*, 1992 WL 96283, at *1 (E.D.Pa. April 23, 1992) (holding that a declaration or affidavit must be made on personal knowledge and must set forth such facts as would be admissible in evidence).

As discussed below, we construe the Plaintiffs' offer of these alleged statements of Desi's Pizza's neighbors as an attempt to show that the Defendants acted against the Plaintiffs' business

14

in order to appease the neighbors, who were complaining about the racial composition of Desi's Pizza's customers.  To this extent, we find that this evidence may be used to establish issues of material fact with respect to the Defendants' discriminatory motive required for their equal protection claim.

The Plaintiffs dispute ¶ 21. of the Defendants' SMF.  (Doc. 102, p. 2, ¶ 21.).  The Defendants state in ¶ 21. that none of the Plaintiffs ever complained of instances of racial discrimination against themselves or their customers.  (Doc. 69, p. 6, ¶ 21.).  The Defendants point to statements made by Chief George which indicate that the Plaintiffs did not inform the Defendants of the alleged racial bias toward Desi's Pizza.  (Doc. 80, pp. 299-300).  The Plaintiffs cite to Declarations of Martin and Francis Desiderio to dispute the Defendants' SMF, ¶ 21.[17] (Doc. 102, p. 2, ¶ 21.).   Martin Desiderio stated that he spoke to both Chief George and Mayor McGroarty concerning the racial bias in the neighborhood toward his business due to the racial makeup of the customers of Desi's Pizza.  (Doc. 103, unnumbered pp. 12-13, ¶'s 20.-27.). Martin Desiderio said that Mayor McGroarty offered to meet with him concerning this problem and that they in fact did meet.  (*Id*.).  Also, Martin Desiderio stated that when approached, Chief George threw up his hands and said "I don't care; it's out of my hands; talk to the Liquor Board."  (*Id*.).  We find that the Plaintiffs have offered sufficient evidence to dispute ¶ 21. of the Defendants' SMF.

The Plaintiffs deny ¶ 22. of the Defendants' SMF.  (Doc. 102, p. 2, ¶ 22.).  In ¶ 22., the Defendants state that none of the Defendants ever did or said anything racially discriminatory or

---

[17] See *supra* note 11.

biased toward the Plaintiffs or their customers.  (Doc. 69, p. 6, ¶ 22.).  The Defendants point to

the Deposition of Chief George in which he stated that neither he, nor any of the Defendants,

did or said anything racially discriminatory or biased.  (Doc. 80, Ex. 4, p. 301).  The Plaintiffs do

not offer evidence to dispute this fact, but simply state, in violation of Local Rule 56.1, that "This

statement lacks all credibility."  (Doc. 102, p. 2, ¶ 22.).  This response by Plaintiffs is in violation

of Local Rule 56.1, which provides that "[s]tatements of material facts in support of, or in

opposition to, a motion shall include references to the parts of the record that support the

statements."  Thus, we do not find that ¶ 22. of the Defendants' SMF is disputed.

The Plaintiffs dispute ¶ 23. of the Defendants' SMF.  (Doc. 102, p. 2, ¶ 23.).  The

Defendants state in ¶ 23. that there is no "legally cognizable evidence in the record that

Plaintiffs or their customers were treated disparately or differently from any one similarly

situated" and further claim that "[t]o the contrary, the record is that Plaintiffs were treated in the

same manner as any others who are arguably similarly situated."  (Doc. 69, pp. 6-7, ¶ 23.).  The

Defendants point broadly to the record of police complaints at other establishments in Wilkes-

Barre to show that the Defendants did not treat the Plaintiffs differently than other businesses in

the area similarly situated.  (Doc. 69, p. 6, ¶ 23. & Doc. 81).  However, the evidence pointed to

by the Defendants does not definitively demonstrate that the Plaintiffs were treated in the same

manner as any other business which was similarly situated.

The Plaintiffs cite to the Declarations of Gordie Roberts and Francis Desiderio to dispute

¶ 23 of the Plaintiffs' SMF.[18]  In his Declaration, Gordie Roberts states that bars with

---

[18] See *supra* note 11.

predominantly African American clientele have been routinely targeted as nuisance bars and closed by the City of Wilkes Barre.  (Doc. 103, unnumbered pp. 17-19).  Mr. Roberts also stated that bars, such as Banana Joe's, with high levels of criminal activity, but a white customer base, were not similarly dealt with.  (*Id*.)  Francis Desiderio, in his Declaration, stated his belief that Desi's Pizza was treated more harshly than other similarly situated bars with predominantly white customers.  (*Id*. unnumbered pp. 5-7, ¶'s 33.-58.).  We find the stated Declarations have sufficiently created disputed facts as to whether the Defendants have in fact treated the Plaintiffs more harshly or singled them out from businesses with predominantly white customers.  The Plaintiffs also generally cite to over 300 pages of Police Reports, without indicating how the reports support their argument.  (Doc. 102, p. 2, ¶ 23.).  Further, the Plaintiffs attach to their brief a copy of charts regarding the number of police citations issued to similarly situated bars with non-minority customers, in comparison to Desi's Pizza.  (Doc. 104, attached exhibits, unnumbered pp. 1-3).  In any event, as stated, we find  ¶ 23.  of the Defendants' SMF to be a disputed material fact.[19]

The Plaintiffs dispute ¶ 24. of the Defendants' SMF.  (Doc. 102, p. 2, ¶ 24.).  In ¶ 24., the Defendants state that none of the Defendants ever singled out Desi's Pizza, or their customers, or treated Desi's Pizza more harshly than any other area businesses.  (Doc. 69, p. 7, ¶ 24.).  The Defendants point to testimony of Chief George, in which he states that neither he, nor any of the Defendants singled out Desi's Pizza or their customers or treated them more harshly than

---

[19] As discuss below, we find genuine issues of material fact with respect to the Plaintiffs' Equal Protection Claim which preclude the granting of the Defendants' Motion for Summary Judgment as to this claim.

any other businesses. (Doc. 80, Ex. 4, p. 298). The Plaintiffs dispute this fact by pointing the Declarations of Geordie Roberts and Francis Desiderio. (Doc. 102, p. 2, ¶24.). Both men compare the closing of Desi's Pizza to Banana Joe's, another bar in Wilkes-Barre, which has remained open despite multiple incident reports and arrests. (Doc. 103, pp. 5-7 & Doc. 103, pp. 17-19, ¶'s 33.-58.). The Plaintiffs also cite to over 300 pages of Police Reports, without discussing what specific portions of this evidence supports their argument. (Doc. 102, p. 2, ¶ 24.). As will be discussed below, we find that ¶ 24 is a disputed material fact as it pertains to the Plaintiffs' equal protection claim.

The Plaintiffs dispute ¶ 25. of the Defendants' SMF. (Doc. 102, p. 2, ¶ 25.). The Defendants state that they did not have a custom to drive minorities out of Wilkes-Barre, or the surrounding communities. (Doc. 69, p. 7, ¶ 25.). The Defendants also stated that the Plaintiffs have admitted that the Defendants did not have a policy to drive minorities out of Wilkes-Barre. (*Id*.). The Defendants cite to the Deposition of Chief George, in which he states that none of the Defendants had a custom or policy to drive minorities out of Wilkes-Barre. (Doc. 80, Ex. 4, 299). In addition, the Defendants cite to statements made by Francis Desiderio in a Deposition, in which he allegedly stated that District Attorney Dave Lupas did not have a policy for driving minorities out of Wilkes-Barre. (Doc. 80, Ex. 3, pp. 103-04). We find that this evidence does not show that the Plaintiffs admitted that the Defendants do not have a policy against minorities. Rather, it shows that Plaintiff Francis Desiderio admitted that District Attorney Lupas, who is no longer a Defendant in this case, did not have a policy against minorities.

18

The Plaintiffs dispute ¶ 25. by improperly citing to a Declaration of Geordie Roberts, a Declaration of Ronald Felton, a Declaration of Francis Desiderio and over 300 pages of Police Reports.[20]  Geordie Roberts, in his Deposition, described how his bar, Gordie's Cukoo's Nest, was closed, and expresses his belief that the Defendants have a history of targeting bars with a predominantly African American customer base.  (Doc. 103, pp. 17-19, ¶'s 2.-20.).  In his Deposition, Ronald Felton expressed his concern "that the response of the City officials was to take steps to close Desi's down rather than arrest the perpetrators of whatever crimes occurred there."  (*Id*. p. 15).  He also expressed concern regarding the seemingly racial bias toward African Americans in the neighborhood surrounding Desi's Pizza.  (*Id*.).  Francis Desiderio states instances, not involving the Defendants, where people residing in the neighborhood, or had businesses in the neighborhood, expressed racially discriminatory viewpoints concerning Desi's Pizza's customers.  (*Id*. pp. 8-9, ¶'s 73.-80.).  The Plaintiffs fail to explain how the 300 pages of Police Reports demonstrate that the Defendants have a policy against minorities from Wilkes-Barre.[21]  (Doc. 102, p. 2, ¶ 25.).

The Plaintiffs contest ¶ 28. of the Defendants' SMF.  (Doc. 102, p. 3, ¶ 28.).  In ¶ 28., the Defendants state that they never stigmatized or harassed any of the Plaintiffs.  (Doc. 69, p. 7, ¶ 28.).  The Defendants point to the Deposition of Chief George, who testified that neither he, nor the other Defendants, ever stigmatized or harassed the Desiderios or their businesses.  (Doc.

---

[20]  See *supra* note 11.

[21]  As discussed below, we do not find that the Plaintiffs have presented sufficient evidence to support their *Monell* claim against the Defendant City of Wilkes-Barre.  *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978).

80, Ex. 4, p. 302).  The Plaintiffs point to the Declaration of Francis Desiderio to dispute this fact.[22]  (Doc. 102, p. 3, ¶ 28.).  In his Declaration, Francis Desiderio avers that in the Fall of 2000, a newspaper campaign was commenced against Desi's, and that Defendant Chief George stated in a newspaper interview that Desi's Pizza was responsible for 30 stolen cars in the area in the span of one year.  (Doc. 103, p. 7, ¶'s 59.- 60.).  Thus, we find ¶ 28 of the Defendants' SMF to be disputed.

The Plaintiffs deny ¶ 29. of the Defendants' SMF, which states that none of the Defendants ever deprived the Plaintiffs of use of their property.  (Doc. 102, p. 3, ¶ 29. & Doc. 69, pp. 7-8, ¶ 29.).  The Defendants cite the Deposition of Chief George, who testified that none of the Defendants acted to wrongfully deprive the Plaintiffs of the use of their property. (Doc. 80, Ex. 4, p. 303)  The Plaintiffs contend that this is a legal conclusion.  We agree, and do not adopt ¶ 29. as a material fact.

The Plaintiffs dispute ¶ 31. of the Defendants' SMF.  (Doc. 102, p. 3, ¶ 31.).  In ¶ 31., the Defendants state that they have not made defamatory statements regarding the Plaintiffs or their business, and that the only evidence the Plaintiffs can produce against Defendants are the statements they made in the media and a town meeting.  (Doc. 69, p. 8, ¶ 31.).  In his deposition, Chief George denied that any of the Defendants made defamatory statements about the Plaintiffs or their business.  (Doc. 80, Ex. 4, p. 303).  The Plaintiffs contest this fact by pointing to the Declaration of Francis Desiderio.   Francis Desiderio stated that Defendant Chief George, in a local newspaper article, stated that Desi's was responsible for 30 stolen cars in the

---

[22] See *supra* note 11.

area in one year.  (Doc. 103, p. 7, ¶'s 59.-60.).  As discussed below, we do not find that the

Plaintiffs have stated a defamation claim against the Plaintiffs under Pennsylvania law.

The Plaintiffs dispute ¶ 32. of the Defendants' SMF.  (Doc. 102, p. 3, ¶ 32.).  In ¶ 32., the

Defendants state that the Plaintiffs suffered no damages in this case.  (Doc. 69, p. 8, ¶ 32.).  The

Defendants cite to statements made by Plaintiff Francis Desiderio in a deposition, indicating

that the only evidence of damages the Plaintiffs can show are their tax returns.  (Doc. 80, Ex. 1,

pp. 257-8, 260).  To dispute this fact, the Plaintiffs cite to the Declaration of Martin Desiderio,

and Francis Desiderio.[23]  (Doc. 102, p. 3).  In his Declaration, Martin Desiderio stated that as a

result of the closing of Desi's Pizza, he lost income and also sustained damages due to food

spoiling when the Defendants padlocked Desi's Pizza.  (Doc. 103, p. 11, ¶'s 5.-10.).  Francis

Desiderio states that the financial, emotional and physical impact of the events concerning

Desi's Pizza have been devastating, and that his health has been worse since the closing of his

business.  (*Id*. at pp. 7-8, ¶'s 65.-71.).  As we find below, the Plaintiffs have properly asserted

they have suffered damages with respect to their equal protection claim under §1983.

The Plaintiff denies ¶ 35. of the Defendants' SMF.  (Doc. 102, p. 3, ¶ 35.).  The

Defendants state that the Plaintiffs' tax returns show that they did not incur any damages.  (Doc.

69, p. 9, ¶ 35.).  The Defendants point to the Deposition of Francis Desiderio in support of their

argument that the Plaintiffs' tax returns prove that the Plaintiffs did not incur any damages.

(Doc. 80, Ex. 1, p. 248-252).  Plaintiff Francis Desiderio's testimony shows that after the closing

of Desi's Pizza, his tax returns showed less loss than years prior to the closing.  (*Id.*).  However,

---

[23] See *supra* note 11.

the testimony to which the Defendants cite fails to  definitively show a lack of any damages of the Plaintiffs in this case.   As stated above, we find the Plaintiffs have asserted they have suffered damages.

 We must now determine if the Defendants are entitled to summary judgment with respect to the Plaintiffs' claims or if there exist disputed material facts.

## VI. Discussion.

### A.  §§ 1981 and 1982 Claims

 In Count Two, the Plaintiffs assert a claim under § 1982 based on the same allegation with respect to their § 1985(3) claim.  (Doc. 37, ¶ 84.).  The Defendants argue that since § 1982 only relates to racial discrimination with respect to the rental or sale of property, and the Plaintiffs do not allege that the City Defendants discriminated against them regarding the sale or rental of property, this claim should be dismissed.  (Doc. 87, pp. 23-24).  As mentioned, the Defendants correctly point out in their reply brief that the Plaintiffs did not address this argument in their opposition brief.  Thus, we find that the Plaintiffs are deemed as not opposing the Defendants' motion with respect to the § 1982 claim.[24]  See Local Rule 7.6, M.D. Pa.  We also  agree with Defendants that Plaintiffs' failure to address the Defendants' argument concerning the  § 1982 claim supports their request for dismissal of this claim.  (Doc. 105, p. 1).

---

[24]  We note that the Plaintiffs did not seek leave of Court to file a sur-reply brief in order to address the Defendants' arguments  regarding the dismissal of their Counts Two, Three, Four and Five, despite the Defendants' reply brief which clearly pointed out the Plaintiffs' failure to address these counts.  (Doc. 105, p. 1).

More importantly, we agree with the Defendants that the Plaintiffs have not alleged that the Defendants discriminated against them regarding the sale or rental of property, and thus, have failed to state a § 1982 claim.  *See Woodward v. Bowers*, 630 F. Supp. 1205, 1209 (M.D. Pa. 1986)("The case law has interpreted this statute [42 U.S.C. § 1982] to protect 'the right of black persons to hold and acquire property on an equal basis with white persons and the right of blacks not to have property interests impaired because of their race.'" (Citation omitted)); *Brown v. Phillip Morris, Inc.*, 250 F. 3d 789, 797 (3d cir. 2001)(stating that §1982 "prohibits racial discrimination in transactions relating to real and personal property").

Likewise, we find that the Plaintiffs have not stated a claim under § 1981.  (Doc. 37, ¶ 84.). As the *Brown* Court stated, §1981 "prohibits racial discrimination in the making and enforcement of contracts and property transactions."  250 F. 3d at 796.  In order to state claims under both §§ 1981 and 1982, the Plaintiffs must allege an intent to discriminate on the basis of race by the Defendants and that Defendants deprived the Plaintiffs of their rights because of race.  Id. at 797.[25]  We find that the Plaintiffs have met the racially discriminatory intent requirements of their § 1981 and § 1982 claims.  We also  agree with the Plaintiffs that the required racially discriminatory  intent for claims under §§ 1981 and 1982 can be directed against a racial group of which the Plaintiffs are not members.   (Doc. 104, pp. 10-11  & Doc. 36, p. 25).   However, the Plaintiffs must also  allege that the discrimination under § 1981 relates to the making and enforcement of contracts and property transactions, and under § 1982

---

[25]  The Third Circuit in its  Desi's Opinion also stated that "in order to state a claim under either 42 U.S.C. § 1981 or 42 U.S.C. § 1982, a Plaintiff must show that the Defendant acted with discriminatory intent."  Doc. 36, p. 25.

relates to real and personal property transactions.  As the Defendants argue, the Plaintiffs make

no such allegations against the City Defendants in our case, and the Plaintiffs do not claim that

the actions the Defendants allegedly took, with a racially discriminatory intent to drive out

minorities from the community, in any way related to real and personal property transactions or

the making and enforcement of contracts.  (*Id*.).  Nor do we find that the Plaintiffs' brief

addresses the Defendants' argument in regards to this deficiency of their statutory discrimination

claims under §§ 1981 and 1982.[26]

Recently, in *Domino's Pizza v. McDonald*, the Supreme Court stated that "[a]ny claim

brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' §

1981(b), under which the plaintiff has rights." __ U.S. __ (2005), 126 S.Ct. 1246, 1249 (2005).

The Court also stated that "[s]ection 1981 offers relief when racial discrimination blocks the

creation of a contractual relationship, as well as when racial discrimination impairs an existing

contractual relationship, so long as the plaintiff has or would have rights under the existing or

proposed contractual relationship." *Id*. at 1250.  Further, the Court stated that,

> nothing in the text of § 1981 suggest that it was meant to provide an
> omnibus remedy for *all* racial injustice.  If so, it would not have been
> limited to situations involving contracts.  Trying to make it a cure-all not
> only goes beyond any expression of congressional intent but would
> produce satellite § 1981 litigation of immense scope.

*Id*. at 1252.  Finally, the Court held:

---

[26]  We note that in its Opinion, the Third Circuit  only held that Plaintiffs' Equal Protection and §§ 1981
and 1982 claims were not barred by *Rooker-Feldman*.  (Doc. 36, p. 25, n. 3).  The Court did not consider "any
other arguments that may be made regarding these claims."  (*Id*.).

> [A] plaintiff cannot state a claim under § 1981 unless he has (or would
> have) rights under the existing (or proposed) contract that he wishes to
> "make and enforce."  Section 1981 plaintiffs must identify injuries flowing
> from a racially motivated breach of injuries flowing from a racially
> motivated breach of their own contractual relationship, not of someone
> else's.

*Id*.

Thus, we shall grant the Defendants' motion, construed as a Rule 12(c) Motion for judgment on the Pleadings, with respect to the Plaintiffs' statutory discrimination claims under §§ 1981 and 1982.[27]

### B.  § 1985 Claims

In Count Two, the Plaintiffs  assert an unspecified claim under § 1985, which, as stated, both we and the Third Circuit  assumed that they are relying upon § 1985(3).  (Doc. 37, ¶ 84.).  With respect to their § 1985(3) claim, the Plaintiffs do not state that a conspiracy existed amongst  the Defendants, who were state actors, to engage in conduct that violated their Fourteenth Amendment rights.  Rather, the Plaintiffs aver that the Defendants acted to shut down their establishment in retaliation against them for welcoming Black  and Latino patrons, and as part of a custom and policy designed to drive such persons from  the city and its communities.  (*Id*.).  We do not find that the Plaintiffs have asserted a § 1985(3) conspiracy

---

[27]  Defendants' Motion is one for Summary Judgment pursuant to Rule 56, and alternatively, as one for Judgment on the Pleadings pursuant to Rule 12(c).  Doc. 68.  We consider Defendants' motion under Rule  12(c) with respect to Plaintiffs' statutory discrimination claims under §§ 1981 and 1982.

between private actors and state actors.[28]  As a result of this custom or policy, the Plaintiffs claim

that they suffered injuries such as discrimination and economic losses.  (*Id*. at pp. 12-14).[29]

In their Brief, the Defendants argue that Count Two  fails to state any  claims.  (Doc. 87,

pp. 23-25).  While Count Two  does not specifically mention which Defendant retaliated against

the Plaintiffs and what official a custom or policy was promulgated to drive out minorities from

the City and surrounding communities, it does incorporate by reference ¶'s 1.-83. of the

amended  pleading.  (Doc. 37, ¶ 83.).  The Defendants also argue that the Plaintiff's § 1985

claim fails, in that there is no evidence that they had any racial motive or that they retaliated

against the Plaintiffs, and thus that the record is void of any evidence of class based invidious

discriminatory animus.  (Doc. 87, p. 25).  Since there is no class based discrimination of the

Defendants alleged by the Plaintiffs as against them in Count Two, we find that the § 1985(3)

conspiracy claim should be dismissed.  Nor do the Plaintiffs address in their Brief if any class-

based animus requirement of a § 1985 claim is stated in Count Two.

We find that the Plaintiffs' claim under § 1985(3) in Count Two should be dismissed.

The Plaintiffs did not claim to be members of a protected class.  As the Defendants correctly

state in their Brief, the Plaintiffs do not make any allegation or offer evidence of class based bias

---

[28]  Nor do we find that Plaintiffs have pointed to any evidence of a private conspiracy  between the neighbors of Desi's Pizza and the City Defendants to drive out Black and Latinos persons from the City and surrounding neighborhoods.  We do not find that  the hearsay statements which  were allegedly made by neighbors of Desi's  to Frank Desiderio prove the existence of a private conspiracy between the neighbors and the City Defendants with the stated purpose of driving out minorities  from the City and neighboring communities.  (Doc. 104, p. 2).

[29]  For present purposes, as stated, we must accept the Plaintiffs' allegations as true.

against them.  Rather, the Plaintiffs claim that the Defendants had an unspecified custom and policy to drive minorities from the City, and that the Defendants retaliated against them because Desi's clientele  was allegedly predominantly African-American and Latino.  (Doc. 87, p. 7).  The Plaintiffs do not assert that they are part of a protected class for purposes of §1985(3).   The Plaintiffs aver a class based discriminatory animus against their clientele by the Defendants, but do not allege that the Defendants entered into a conspiracy with private actors to violate their fundamental rights.  Thus, the Plaintiffs do not allege that they are part of a class protected by § 1985(3) and they do not assert allegations of a conspiracy that caused a violation of their fundamental rights.  Defendants' Motion for Judgment on the Pleadings with respect to  the § 1985(3) claim will be granted.   As will be discussed below, the Plaintiffs are not alleged to be part of a protected class and there is no claim of a private conspiracy.

The Court, in *Garrett v. Nesbitt*, 1998 WL 531841, at * 3 (E.D. Pa. August 21, 1998), stated:

> In order to state a claim for violation of § 1985(3), a plaintiff must allege four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See United Brotherhood of Carpenters and Joiners of Am. v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L .Ed. 2d 1049 (1983).

27

The Court in *Williams v. Brotherhood Mission's Board of Trustees,* 2004 WL 503490, at

*3 (E.D. Pa. February, 10, 2004), stated as follows:

> In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790,
> 29 L.Ed.2d 338 (1971), the Supreme Court established
> the criteria for measuring whether a complaint states a cause
> of action under § 1985(3):
>> "To come within the legislation a complaint must allege
>> that the defendants did (1) 'conspire or go in disguise
>> on the highway or on the premises of another' (2) 'for the
>> purpose of depriving, either directly or indirectly, any
>> person or class of persons of the equal protection of the laws,
>> or of equal privileges and immunities under the laws.' It must
>> then assert that one or more of the conspirators (3) 'did, or
>> caused to be done, any act in furtherance of the object of
>> [the] conspiracy, whereby another was (4a) injured in
>> his person of property' or (4b) 'deprived of having and
>> exercising any right or privilege of a citizen of the
>> United States."'
> 403 U.S. at 102-103; *Lake v. Arnold*, 112 F.3d 682 91997). In
> *Griffin*, the Supreme Court clarified that the reach of § 1985(3)
> is limited to private conspiracies predicated on "racial, or perhaps
> otherwise class based, invidiously discriminatory animus." *Id.*
> at 102. The Court strictly construed the requirement of
> classJuly 25, 2006based invidious animus in *United Brotherhood of Carpenters*
> *and Joiners of America, Local 610 v. Scott*, 463 U.S. 825,
> 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), finding that commercial
> and economic animus could not form the basis for a § 1985(3)
> claim. Read together, these two cases establish that in order
> to state a claim under 42 U.S.C. § 1985(3), a plaintiff must
> allege: (1) a conspiracy; (2) motivated by a racial or class based

> discriminatory animus designed to deprive, directly or indirectly,
> any person or class of persons to the equal protection of the laws;
> (3) an act in furtherance of the conspiracy; and (4) an injury
> to person or property or the deprivation of any right or privilege
> of a citizen of the United States. *Id.* at 828-29; *Griffin*, 403
> U.S. at 102-103.  The vitality of this analysis was reaffirmed
> in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 628,
> 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

As the Supreme Court in *Griffin* indicated, § 1985(3) is limited to private conspiracies. 403 U.S. at 102.  Thus, the Plaintiffs attempt to raise a claim under § 1985(3) against the City Defendants, who are state actors, *sans* an alleged conspiracy with private actors, does not meet this hurdle.  Further, as stated above, the Courts have held that commercial and economic animus could not form the basis for a § 1985(3) claim.  Here, the Plaintiffs allege commercial animus by the City Defendants  against Desi's based on its alleged predominantly Black and Latino  clientele.

Moreover, the Plaintiffs have  not shown that they are  a member of a protected class under § 1985(3).   The *Williams* Court discussed the requirement of establishing membership of a protected class for a § 1985(3) claim and stated:

> The Supreme Court stated in *Griffin* that the allegation of conspiracy
> under § 1985(3) requires a showing of "some racial or perhaps
> otherwise class-based, invidiously discriminatory animus."  *Griffin*,
> 403 U.S. at 102; *see Burnes-Toole v. Byrne*, 11 F.3d 1270
> (5th Cir. 1994) (noting that subsequent lower court decisions have
> not delineated the outside boundaries of the classes protected by
> § 1985(3) (Citations omitted).  Despite the ambiguity in § 1985(3)

jurisprudence, the Third Circuit has concluded that both the
mentally retarded and women are afforded the protection of
§ 1985(3). [FN4] *Novotny; Lake*, 112 F.3d at 688; *see also Natale v.
Schwartz*, 1999 WL 1134535, at *7 (E.D. Pa. Dec. 10, 1999)
(noting that the logic applied by the Third Circuit in *Lake* extends
easily to national origin, provided that "there has been
historically pervasive discrimination against people of a
particular national origin"); *but see Ridgewood Bd. of Educ. v.
N.E. ex rel. M.E.,* 172 F.3d 238 (3d Cir. 1999) (refraining from
deciding that § 1985 protects the disabled in general).

> FN4.  *See Trautz v. Weisman*, 819 F.Supp. 282,
> 291 (S.D. N.Y. 1993) ( "The best that can be said
> of § 1985(3) jurisprudence thus far is that it has
> been marred by fits and starts, plagued by
> inconsistencies, and left in flux by the Supreme Court.).

In holding that women fall within the class of individuals
protected by § 1985(3), the court wrote that "[i]n determining
the applicability of § 1985(3) . . . [the] initial inquiry must be
whether the actions which form the basis for [the] case are the
offspring of a 'class-based invidiously discriminatory animus'
within the meaning of the *Griffin* test."  *Novotny*, 584 F.2d at
1241.  This court has expressed a commitment to equality,
in order "to ensure that private conspirators do not strip other
citizens of the equal protection of the laws" particularly "those
discrete and insular minorities who have traditionally borne
the brunt of prejudice in our society."  *Lake*, 112 F.3d at 686
*citing* Ken Gormley, *Private Conspiracies and the Constitution:
A Modern Version of 42 U.S.C. Section 1985(3)*, 64 Tex.L.Rev.
527, 575 (1985).

*Williams, supra* at * 4.

We do not find that the Plaintiffs have alleged any "class-based invidiously discriminatory animus" within the meaning of the *Griffin* test.  Plaintiffs do not claim a private conspiracy amongst the City Defendants and any private actors, and do not claim that they are in a protected class.  We do not find that persons, such as Plaintiffs, are part of "discrete and insular minorities who have traditionally borne the brunt of prejudice in our society."  *Lake, supra,* 112 F. 3d at 686.  (Citation omitted).  Thus, we do not find that our Plaintiffs have stated a claim under  §1985(3).  Therefore, we shall order that the Plaintiffs' claims under § 1985(3) against the City Defendants be dismissed.[30]

### C.  § 1983 Claims

At the outset, we agree with the Defendants' Reply Brief, in which they state that the Plaintiffs' opposition brief does not address their procedural and substantive due process claims. (Doc. 105, p. 1).  Moreover, under Local Rule 7.6, M.D. Pa., we deem the Plaintiffs as not opposing the Defendants' Motion for Summary Judgment with respect to their substantive and procedural due process claims, because they did not address these claims in their opposition brief.  (Doc. 104).  Our review of the Plaintiffs' opposition brief reveals that they only argue that

---

[30]  Notwithstanding our finding that the Plaintiffs' § 1985 claim is deficient, at this late juncture of the case we do not find that they should be permitted to amend their Complaint once again to include more specific facts against the City Defendants.  In fact, the Third Circuit Court already pointed out the failure of the Plaintiffs to specify their § 1985 claim.  Further,  since we find that as a matter of law, the Plaintiffs' § 1985 claim against the City Defendants fails, we find futility of any further amendment of this claim.  We shall not allow the Plaintiffs leave to amend their pleading once again.  We also find undue prejudice to the Defendants if the Plaintiff's were allowed to amend their pleading again since discovery  has been completed and a dispositive motion has been filed. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted).

material issues of fact exist with respect to their equal protection claim.  (*Id*.).  The Plaintiffs also address the immunity defense as well as the *Monell* claim against the Defendant City of Wilkes-Barre, i.e. the City had a custom or policy to drive minorities out of Wilkes-Barre.  (*Id*. at p. 1, 16).  We also construe the Plaintiffs' failure to address their substantive and procedural due process claims in their brief as an indication that they no longer wish to pursue these claims.  Nonetheless, we discuss whether there are any disputed material facts regarding their procedural and substantive due process claims.

In an action brought pursuant to 42 U.S.C. § 1983, the Plaintiff must prove the following two essential elements in order to state a claim:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Williams v. Bor. of West Chester, Pa.,* 891 F.2d 458, 464 (3d Cir. 1989);  *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F.Supp. 2d 491, 499 (M.D. Pa. 2005).  Further, § 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  It is well established that personal liability under § 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 376-77 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,* 451 U.S. at *535*.  It is also well settled in the Third Circuit that the Defendant's personal involvement in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint

must allege such personal involvement. *Id.* Each named Defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which the Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to § 1983 liability. *See Rode,* 845 F.2d at 1208.

## 1. Procedural Due Process Claim

First, we will address the Plaintiffs' Procedural Due Process Claim.[31] The Defendants move for summary judgment on this claim by arguing that procedural due process requires that a litigant be given notice and an opportunity to be heard, and that in this case, the Plaintiffs received both. (Doc. 87, p. 32). In their Amended Complaint, the Plaintiffs alleged that the Defendants violated the Plaintiffs' procedural due process rights by obtaining an *ex parte* order

---

[31] While the Third Circuit did not have sufficient record before them whether the Plaintiffs' procedural due process claim was barred by the *Rooker-Feldman* doctrine (Doc. 36, p. 27), we note that the Defendants' present Motion for Summary Judgment does not seek judgment with respect to this claim based on the *Rooker-Feldman* doctrine; rather, the Defendants seek judgment on this claim by arguing that there are no disputed material facts. (Doc. 105, p. 1 & Doc. 87, p. 32). The Defendants argue that the Plaintiffs received all of the process that was due to them in the state court proceedings. (Doc. 87, p. 32).

shutting down Desi's Pizza, without an opportunity for the Plaintiffs to be heard, despite the fact that no emergency existed that required such action.  (Doc. 37, p. 13, ¶ 90.).

It is undisputed that on March 12, 2001, the Plaintiffs' business, Desi's Pizza, was closed without notice, hearing or court adjudication, pending a hearing in the CCP.  (Doc. 36, p. 6 & Doc. 79, App. 1).  As the Third Circuit stated, on March 12, 2001, the day District Attorney Lupas, filed a complaint seeking an order to enjoin Desi's operation for one year based on the claim that it was a common nuisance, "without conducting a hearing, the state court granted a preliminary injunction closing Desi's... [t]he state court did not give the Plaintiffs the opportunity to present testimony concerning the propriety of the preliminary injunction until a week after the injunction was issued.  (Doc. 36, p. 6).  In their Amended Complaint, the Plaintiffs alleged that no emergency existed which permitted such *ex parte* action.  (Doc. 37, p. 13, ¶'s 87.-90.).

In *Development Group, LLC v. Franklin Tp. Bd. of Supervisors,* the Court stated that for a Plaintiff to successfully make out a claim for procedural due process under § 1983, a Plaintiff must (1) "assert that Defendants, acting under color of state law, deprived Plaintiffs of a protected property interest," and (2) that the "local and state procedures for challenging the deprivation are inadequate."  2003 WL 22358440, at * 7- 8 (E.D. Pa. September 24, 2003).  In *Franklin Township*, the Court found that, "[a] state provides constitutionally adequate procedural due process when it provides 'reasonable remedies to rectify a legal error by a local administrative body.'  *Id*. (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995), *overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003).  *Franklin Township* also established that "when a

state affords a 'full judicial mechanism' with which to challenge administrative decisions," then a state has provided adequate procedural due process, "regardless of whether the plaintiff avails herself of that appeal mechanism." *Id*. at * 8.  (*quoting Midnight Sessions, Ltd. v. Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991), *overruled on other grounds by United Artists*, 316 F.3d at 400) (Citations omitted).

We find that in this case, adequate procedures existed under state law to remedy the alleged erroneous decision rendered by the CCP to enjoin the operation of Desi's Pizza for one year.  Further, we find that the Plaintiffs fully availed themselves of the available state procedures with respect to their claims.  It is undisputed in this case that:

> The District Attorney of Luzerne County filed a Complaint in Equity and Petition for Temporary Writ of Injunction on March 12, 2001.  On that date, the Commonwealth requested an ex-parte Preliminary Injunction closing Desi's Pizza pending a Hearing.  Finding that immediate and irreparable injury would result before a Hearing could be held, this Court [CCP Luzerne County] granted the request and enjoined the operation of the established.

*Commonwealth v. Desiderio, et al.*, C.C.P. Luzerne, No. 19-E of 2001, March 28, 2001.

On March 16, 2001, the Plaintiffs filed an answer to the District Attorney's complaint in the CCP.  *Desi's Pizza,* 321 F.3d at 416.  On March 19, 2001, the Plaintiffs filed an amended answer in the state court and commenced the present action in the District Court.  *Id*.  On the same day, the state court began hearings to determine whether the closing of Desi's Pizza was proper.  *Id*.  On March 19, 21, and 22, 2001, the CCP heard testimony from the Plaintiffs and the Commonwealth concerning the closing of Desi's Pizza.  *Id*.  On March 28, 2001, the CCP

court issued an Order enjoining the operation of Desi's Pizza from March 12, 2001 to March

12, 2002. *Id*.  This three day evidentiary hearing can certainly be said to have provided the

Plaintiffs with ample opportunity to be heard.  Further, the CCP Court's final injunction Order

was not issued until after the evidentiary hearing. *Id*.

In *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990), the Supreme Court stated:

> A § 1983 action may be brought for a violation of procedural due process,
> but here the existence of state remedies *is* relevant in a special sense. In
> procedural due process claims, the deprivation by state action of a
> constitutionally protected interest in "life, liberty, or property" is not in itself
> unconstitutional; what is unconstitutional is the deprivation of such an
> interest *without due process of law*. (Citations ommited).  The
> constitutional violation actionable under § 1983 is not complete when the
> deprivation occurs; it is not complete unless and until the State fails to
> provide due process. Therefore, to determine whether a constitutional
> violation has occurred, it is necessary to ask what process the State
> provided, and whether it was constitutionally adequate. This inquiry
> would examine the procedural safeguards built into the statutory or
> administrative procedure of effecting the deprivation, and any remedies
> for erroneous deprivations provided by statute or tort law.

The record is clear in the instant case that an adequate state remedy existed for the

Plaintiffs, that the Plaintiffs utilized this remedy, and that this remedy was relevant to Plaintiffs' §

1983 procedural due process claim, as the *Zinermon* Court stated.

We find that the state procedures for Plaintiff's challenge of the closing of Desi's Pizza

were adequate and that the state, by allowing the Plaintiffs to present three days of testimony

and evidence before the Court of Common Pleas, provided "reasonable remedies to rectify a

legal error by a local administrative body." *DeBlasio*, 53 F.3d at 597.  Upon review of the

record, it does not appear that the Plaintiffs appealed the decision of the CCP to enjoin the

operation of Desi's Pizza for one year.  Thus, the Plaintiffs did not exhaust their state court

apellate remedies with respect to the CCP Court's March 28, 2001 injunction Order.  However,

as the *Franklin Township* Court stated, the state has provided an adequate procedural process

when it affords Plaintiffs a full judicial mechanism with which to challenge the state decision,

regardless of whether the Plaintiffs avail themselves of this mechanism.  *Franklin Township*, 2003

WL 22358440, at * 8.

       This Court in *Lonzetta Trucking and Excavating, Co. v. Hazle Township Zoning Board*,

considered a similar procedural due process claim regarding the closing of a quarry by zoning

officials prior to a hearing, and the Court dismissed this claim since the state provided an

adequate process to address the closing.  2005 WL 3277996, at * 1 (M.D. Pa. Dec, 2, 2005);

*Lonzetta Trucking and Excavating, Co. v. Schan*, 144 Fed.Appx. 206 (3d Cir. 2005).

       Thus, we shall grant that Defendants' Motion for Summary Judgment (Doc. 68) with

respect to Plaintiffs' procedural due process claim.  We will now address the Plaintiffs'

substantive due process claim.

## 2.  Substantive Due Process Claim

        The Plaintiffs claim that the Defendants violated the Plaintiffs' substantive due process

rights by abusing their police powers for the purpose of "destroying [the] Plaintiffs and their

business," acting to "stigmatize and harass [the] Plaintiffs," and acting "to wrongfully deprive

[the] Plaintiffs of the use of their property and the right to pursue legitimate commercial

endeavors." (Doc. 37, pp. 12-13, ¶ 86.).  The Defendants move for summary judgment on this

claim by arguing that by enjoining the operation of Desi's Pizza, the Defendants did not

interfere with a fundamental right.  (Doc. 87, p. ).  The Defendants also argue that even if the Defendants' actions did amount to depriving the Plaintiffs of a fundamental right, their actions do not reach a level that shocks the conscience.  (*Id*.).  Further, the Defendants argue that the Plaintiffs cannot present evidence that the Defendants actions were without rational basis in order to establish that their actions were arbitrary and capricious for constitutional purposes. (*Id*.).

In response, the Plaintiffs state that the Defendants violated their substantive due process rights by claiming that the Defendants acted to enjoin the operation of Desi's Pizza because of the minority "makeup" of their customers.  (Doc. 37, pp. 12-13, ¶ 86. & Doc. 104, p. 11).

The Third Circuit stated, "We have serious doubts whether the Plaintiffs' allegations state a substantive due process claim."  *Desi's Pizza*, 321 F.3d at 427.  As discussed below, we find that the Defendants are entitled to judgment with respect to the Plaintiffs' substantive due process claim.

Regarding issues of substantive process, the Fourteenth Amendment  provides, in part, that "no State [shall] deprive any person of life, liberty, or property without the due process of law...." U.S. Const. Amend. XIV, § 1. "To prevail on a substantive due process claim under §1983, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates Ltd. v. W.J.  Gretkowski, et al.,*205 F.3d 118 (3d. Cir. 2000).  "[A] substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only  where the plaintiff has been deprived of a 'particular quality of property interest.' " *Woodwind Estates Ltd.,*

205 F.3d at 122, *citing Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority*, 103

F.3d 1165, 1179 (3d Cir.1997).

> In *Desi's Pizza*, the Third Circuit stated:

>> To obtain relief under the substantive component of the Due Process
>> Clause for a deprivation of property, a plaintiff must make two showings.
>> First, the plaintiff must "establish as a threshold matter that he has a
>> protected property interest to which the Fourteenth Amendment's due
>> process protection applies." *Woodwind Estates, Ltd. V. Gretkowski*, 205
>> F.3d 118, 123 (3d Cir. 2000).  While the case law concerning which
>> property interests are protected "provides very little guidance," *Homar v.*
>> *Gilbert*, 89 F.3d 1009, 1021 (3d Cir. 1996), one general principle is clear:
>> 'whether a certain property interest' is constitutionally protected 'is not
>> determined by reference to state law, but rather depends on whether that
>> interest is 'fundamental' under the United States Constitution." *Nicholas*
>> *v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000); *see also*
>> *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002) (Citations
>> omitted).  Second, the plaintiff must show that a governmental actor's
>> behavior in depriving him of the interest in question was 'so egregious, so
>> outrageous, that it may fairly be said to shock the contemporary
>> conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8
>> (1998).

321 F.3d at 426-27.

Herein, the Plaintiffs have alleged that the Defendants, namely, the City of Wilkes-Barre,

the former Mayor of Wilkes-Barre and the former Chief of Police, have deprived them of the

lawful use of their property through their alleged policy of closing down bars in Wilkes-Barre

because of the racial "make-up" of their customers.  (Doc. 37, pp. 12-13, ¶ 86.).  As noted

above, the Plaintiffs do not address the Defendants' substantive due process arguments in their

brief.

The Plaintiffs have not met the threshold establishment that they have been deprived of a property interest to which the Fourteenth Amendment applies.   *Woodwind Estates Ltd.*, 205 F.3d at 122.  It is the responsibility of the Plaintiffs, in order to demonstrate a § 1983 substantive due process claim, to "provide the requisite evidence of a protected property interest." *Galanopoulas v. Smithgall*, 2005 WL 196441, at *4 (E.D. Pa. January, 26, 2005) (citing *Independent Enterprises. V. Pittsburgh Water*, 103 F.3d 1165, 1179-80 (3d Cir. 1997)).  The Defendants argue that the Plaintiffs have not been deprived of a fundamental right protected by the Fourteenth Amendment.  (Doc. 87, p. 30).  The Defendants argue that the Plaintiffs have not implicated a fundamental right created by the Constitution by claiming that the Defendants' efforts to enjoin the operation of Desi's Pizza as a liquor establishment violates their substantive due process rights.  (*Id*.).

As the Defendants argue, even if the Plaintiffs did have a property interest protected by the Fourteenth Amendment, the actions of the Defendants do not reach a level that "shocks the conscience." *Desi's Pizza*, 321 F.3d at 426-27.  Also, the Plaintiffs have not put forth evidence that the actions of the Defendants were egregious and arbitrary, which is a required to make a substantive due process claim.  *Id*.  The Defendants, however, have pointed to over three hundred pages in the record containing police reports regarding the criminal activity taking place in and around Desi's Pizza, which indicates that the Defendants did not, in fact, act arbitrarily in seeking to enjoin Desi's Pizza from operation.  (Doc. 81, pp. 1007-1254).

Therefore, we shall grant the Defendants' Motion for Summary Judgment with respect to the Plaintiffs' procedural and substantive due process claims.  We do not address the qualified

immunity claim as to the due process claims, because we find no issue of material fact with regards to the procedural and substantive due process claims.

### 3.  Equal Protection Claim

The Plaintiffs claim that the Defendants, "singl[ed] out" their business and "treat[ed] them in a far harsher manner than other businesses similarly situated."  (Doc. 37, p. 12, ¶ 82.). The Defendants move for summary judgment on this equal protection claim by arguing that the Plaintiffs have no evidence that they treated the Plaintiffs more harshly than other similarly situated bars because of the minority "makeup" of their customers.  (Doc. 104, pp. 4-5 & Doc. 37, p. 12).  The Plaintiffs respond by arguing that other bars similarly situated, but with predominantly white customers were not targeted for closure like Desi's Pizza, despite having similar violations.  (*Id.*).

As the Court in *Barnes Foundation v. Township of Lower Merion*, 942 F.Supp. 970, 983 (E.D. Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

The Fourteenth Amendment equal protection clause prohibits state officials from exercising their discretionary authority in an intentionally discriminatory purpose.  *See Johnson v. Anhorn*, 416 F.Supp.3d 338 (E.D. Pa. 2006).

The Court in *Johnson*, 416 F.Supp.2d at 376, also stated that, "[i]n order for a § 1983 plaintiff to survive a motion for summary judgment where intent is an element of his claim, the plaintiff must provide "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." (quoting *Crawford-El*, 523 U.S. at 600).  To establish their equal protection claim, the Plaintiffs are required to produce evidence that a discriminatory purpose was a motivating factor in the Defendants' decision to take action to close down Desi's Pizza, i.e. the predominantly minority make up of Desi's clientele.  Here, the Plaintiffs claim that their establishments were treated differently compared with other establishments similarly situated.  The Plaintiffs claim that their establishments were unfairly selected for enforcement based on the predominantly minority racial makeup of Desi's Pizza's clientele.

The Plaintiffs must prove that Desi's Pizza was treated differently then similarly situated establishments that did not have predominantly minority clientele, and the Plaintiffs must produce evidence from which a racially discriminatory purpose can be inferred.  *Barnes Foundation*, 942 F.Supp. at 983.  In this case, the Plaintiffs have sufficiently shown that it was treated differently than similarly situated bars that committed comparable violations and that had citations issued against them (Doc. 104, attached charts), and that there was discriminatory intent based on its predominantly minority clientele since the Defendants were trying to

appease their constituents, i.e., Desi's Pizza's neighbors who expressed racially derogatory comments about Desi's Pizza's clientele.

We find that the Plaintiffs have sufficiently alleged an equal protection claim of selective prosecution under § 1983 against the Defendants, and that there are disputed material facts with respect to this claim that preclude the granting of Defendants' Motion for Summary Judgment.

In March 2001, Luzerne County District Attorney Lupas  filed a complaint in the CCP of Luzerne County, seeking an injunction to close down, as a common nuisance, their establishment known as Desi's Pizza for one year.  (Doc. 105, pp. 1-2).  The Plaintiffs allege this complaint was filed because they welcomed Black and Latino persons as patrons in their establishment.  (Doc. 104, pp. 1, 4, 16).  The Plaintiffs also allege that the Defendants had a custom and policy of driving minorities out of the City and neighboring communities.  (*Id*.).  The Plaintiffs assert an equal protection claim based on selective prosecution under the Fourteenth Amendment.  (*Id*.).  Plaintiffs allege that "Defendants [sic] actions were done in retaliation against Plaintiffs for welcoming Black and Latino persons as patrons at their establishments".  (Doc. 37, ¶ 84.).

The Third Circuit, in *Desi's Pizza*, stated that "the Plaintiffs' claims that the Defendants' alleged campaign of harassment violated the Equal Protection Clause ... rely on the premise that the Defendants' actions were undertaken with a racially discriminatory intent."  321 F.3d at 424.  The Court also found that the Plaintiffs' equal protection claim was "predicated on the allegation that the Defendants' various actions against the Plaintiffs were motivated by a desire

to drive African-Americans and Latinos out of Wilkes-Barre." *Id*. at 415.  The Court then stated

that, "[i]t is well established, however, that selective prosecution may constitute illegal

discrimination even if the prosecution is otherwise warranted." *Id*. at 425.  The Court noted

that the Plaintiffs allege that Desi's "was treated in a 'far harsher manner than other businesses

similarly situated.'" *Id*. at 417.  Thus, even if Desi's Pizza was indeed a nuisance bar with many

complaints and citations lodged against it, if the business was singled out for prosecution based

on the racial make up of its clientele, and other similarly  situated establishments with

predominantly white clientele were not prosecuted, it may amount to illegal discrimination.

The Third Circuit concluded that the Plaintiffs' equal protection claim "may proceed on the

theory that, although there were numerous establishments in Wilkes-Barre that clearly

constituted common nuisances under Pennsylvania law, the Defendants targeted Desi's with the

intent to drive certain ethnic groups out of the city." *Id*. at 424.

    Thus, the gist of the Plaintiffs' equal protection claim is that Desi's Pizza was singled out

and treated by Defendants in a harsher manner than similarly situated bars that also were

nuisances,   and that Defendants did so  in order to drive out African-Americans and Latinos

from Wilkes-Barre and neighboring communities (i.e., the Defendants were motivated by racial

bias).  As the Third Circuit in *Desi's Pizza* summarized, "[t]he theory of the Plaintiffs' Equal

Protection [claim] ... is that other establishments possessing liquor licenses in Wilkes-Barre had

committed equally serious and obvious violations of the Liquor Code and/or Crimes Code, and

that Defendants overlooked those violations because of the ethnic composition of those

establishments' clientele." *Id*. at 425.

Plaintiffs allege that Defendants violated their rights to equal protection due to their selective enforcement of the nuisance bar laws against them in a manner that was arbitrary and irrational, and motivated by the racial make up of Desi's predominantly African-American and Latino clientele.  To establish a Fourteenth Amendment selective enforcement claim, the Plaintiffs must show "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of Constitutional rights, or malicious or bad faith intent to injure a person."[32] *Pagliuco v. City of Bridgeport*, 2005 WL 3416131, at *4 (D. Conn. Dec, 13, 2005)(Citations omitted).  Thus, as the *Pagliuco* Court concluded, "Plaintiffs have standing to raise an equal protection claim that they were singled out for disadvantageous  treatment because of their African-American clientele." *Id*.  Further, the Plaintiffs must show that a discriminatory purpose was a motivating factor in the Defendants' conduct to shut down Desi's Pizza.  *See Johnson*, 416 F.Supp.2d at 338, 375-76.

_____ The Court in *Pagliuco*, also stated that a Plaintiff must show "purposeful and systemic discrimination by specifying instances in which the Plaintiff was singled out for unlawful oppression in contrast to others similarly  situated", i.e., the Plaintiffs must show that other similarly situated bars with citations and complaints against them were treated differently.  2005 WL 3416131, at *5.  Here, we find that the Plaintiffs have produced sufficient evidence with respect to their equal protection claim to withstand the Defendants' Motion for Summary

---

[32]  We note that even though our Plaintiffs are non-minorities, "courts have repeatedly recognized that non-minority vendors or business owners, such as Plaintiffs, have standing to maintain such [Fourteenth Amendment selective enforcement] claims."  *Pagliuco*, 2005 WL 3416131 at *5.  (Citations omitted).

Judgment.  In particular, we find that the Plaintiffs have produced enough evidence that the Defendants singled them out for selective law enforcement as a nuisance bar when compared to similarly situated bars.

As the *Pagliuco* Court stated, "[t]o be similarly situated, the individuals with whom [the Plaintiff ] attempts to compare [himself] must be similarly situated in all material respects." *Id*. at *6 (Citation omitted).  Thus, the establishments to which the Plaintiffs point must have a sufficiently similar situation to the Plaintiffs to draw an inference that the different treatment was due to discrimination.  *Id*.  Generally, "whether persons are similarly situated is a factual issue that should be submitted to the jury." *Id*.  (Citations omitted).

We will now discuss the evidence submitted by the parties which we find creates material disputed facts with respect to the Plaintiffs' equal protection claim.  The Plaintiffs point out many instances of genuine factual disputes in their opposition Brief.  (Doc. 104, pp. 1-5). To dispute the Defendants' claims that they did not have knowledge of the racial "makeup" of Desi's Pizza's customers (Doc. 105, pp. 2-3), the Plaintiffs point to testimony of Chief George. (Doc. 104, pp. 1-2).  Although Chief George claimed to have no knowledge of the racial "makeup" of Desi's Pizza's customers, he did state that he lived two blocks from Desi's Pizza and took daily walks in the neighborhood.  (Doc. 80, Ex. 4, pp. 30, 42, 244-45).  The Plaintiffs also point out that Chief George did know the racial makeup of the Whitehouse bar, which is six blocks away from Desi's Pizza.  (*Id*. at 103).  Thus, an inference can be drawn that Chief George had knowledge of the racial composition of Desi's Pizza's clientele.[33]

---

[33] We note, as stated above, we shall draw all inferences from the facts in the Plaintiffs' favor.

The Defendants claim that none of the Defendants have treated Desi's Pizza more harshly than other bars, and deny taking action against Desi's Pizza because of the racial makeup of the Plaintiffs' customers. (Doc. 105, p. 12). However, the Plaintiffs put forth evidence showing that the neighbors in the area surrounding Desi's Pizza, had, on several occasions, made racially disparaging remarks regarding the Plaintiffs' customers. (Doc. 104, pp. 2-3). Also, the Plaintiffs point to violations by two neighborhood bars, Banana Joe's and the Whitehouse, which were not closed by the Defendants, to show that the Defendants have, in fact, treated Desi's Pizza more harshly than other similarly situated establishments. (*Id*. at 4).

In their Brief, the Plaintiffs cite to several bars in Wilkes-Barre which serve a predominantly white clientele which were not closed by the Defendants and were not selected for prosecution as nuisance bars under Pennsylvania law despite their violations. (Doc. 104, Ex. 1-3). In his deposition, Plaintiff Francis Desiderio testified that other bars, namely, White House, Shot-ZZZ, Dougherty's, Glass Bar, Woodlands and Pal's Inn, all in the same neighborhood as Desi's Pizza, were not treated in the same way by the Defendants. (Doc. 80, Ex. 2, p. 56). Also, Plaintiff Francis Desidario testified that other bars, namely, Tom and Eve's, Gordy's, Airy Tavern, and Chu's, near Desi's Pizza, which also had primarily minority customers, were shut down by the Defendants. (*Id*. at 69). The Plaintiffs averred that this showed that the Defendants had a custom or policy of driving minorities out of Wilkes-Barre and also demonstrated the harsher treatment Desi's Pizza was subjected to at the hands of the Defendants. (*Id*. at 53-56, 64-66).

In support of their claim that they were singled out by the Defendants based on their minority clientele, i.e., to show the discriminatory intent element of their equal protection claim, the Plaintiffs have offered evidence, as discussed above, of the racially biased neighbors of Desi's Pizza towards African Americans and Latinos.  Taking this evidence in the light most favorable to the Plaintiffs, as we must in considering a summary judgment motion, this evidence creates a reasonable inference that the Defendants' actions toward Desi's was motivated by the racial make-up of Desi's Pizza's clientele.  We find factual disputes between the Plaintiffs' and the Defendants' evidence with respect to whether the Defendants treated the Plaintiffs' establishment differently than they treated other similarly situated establishments.  The Plaintiffs provided evidence that similarly situated bars with predominantly white clientele that committed violations were not closed when the Plaintiffs' bar with similar violations and predominantly African American and Latino clientele was closed.

We find that, for present purposes, the Plaintiffs' evidence is sufficient to allow a jury to find that the Plaintiffs' have met their burden of establishing a discriminatory motive with respect to their equal protection claim.  However, we do not find that the Plaintiffs have produced sufficient evidence that the Defendant City of Wilkes-Barre had a custom or policy of driving out minorities from its communities.

Upon consideration of the Defendants' Reply Brief, we note that the Defendants argue that the two bars named by the Plaintiffs in their Brief, are not similarly situated to Desi's Pizza.  (Doc. 105, pp. 11-14).  However, the Plaintiffs have offered sufficient admissible evidence regarding the number of complaints against the other bars and how they were comparable to

48

Desi's Pizza, and that these other bars engaged in conduct comparable to Desi's Pizza such that the Defendants should have taken enforcement action against the other bars.  We find that there is enough evidence produced so that a jury must determine if Desi's Pizza was singled out for selective enforcement as compared to the other identified bars, and if the Defendants' motivation was the impermissible consideration of the  predominantly African-American and Latino clientele of Desi's Pizza.[34]

Therefore, we find that Plaintiffs have produced enough evidence to show the two required elements of their equal protection claim against Defendants McGroarty and George. We shall deny the Defendants' Motion for Summary Judgment with respect to the Plaintiffs' equal protection claim under §1983.

Plaintiffs also assert a *Monell* claim against the City Defendant alleging that the City had a custom or policy to drive minorities out of Wilkes-Barre.  (*Id*. & Doc. 104, p. 16).  We shall first address the First Amendment retaliation claim, and then the *Monell* claim.

### 4.  First Amendment Retaliation

We agree with the Defendants that the Plaintiffs' retaliation claim is based on a violation of their First Amendment right to freedom of association.  (Doc. 87, p. 24).  The Defendants indicate that to state a First Amendment retaliation claim based on freedom of association, the Plaintiff must show that he suffered adverse governmental action as a result of taking part in a

---

[34] As discussed below, as in the *Pagliuco* case, we have found that the Plaintiffs have not offered evidence with  respect to their claim that their Fourteenth Amendment violation occurred pursuant to a policy or custom of Wilkes-Barre to drive out minorities from the City. 2005 WL 3416131, at * 7, n. 12.  Thus, we shall dismiss Wilkes-Barre as a Defendant in this action.

protected activity. (*Id*.).  Defendants cite to *Altieri v. PSP*, 2000 WL 427272, at *8-9 (E.D. Pa.

April 20, 2000), to support this argument.   In *Altieri*, the Plaintiffs alleged that the Defendants

violated their First Amendment right of association by retaliating against them for associating

with Black and Hispanic people.  The *Altieri* Court stated that, "[a] claim for retaliating against

an individual who exercises his right to free association is cognizable." (Citation omitted).  *Id*. at

*8.  The *Altieri* court stated that:

> To make such a claim, a Plaintiff must demonstrate that he suffered
> adverse action, at the hands of the government, as a result of his taking
> part in protected activity. The Supreme Court has recognized two, related
> types of association: association based on intimate human relationships in
> which the association is a fundamental element of liberty and associations
> formed to engage in protected First Amendment activities, such as religion
> or speech.

(Citation omitted).  *Id*. at *8-9.

The Defendants argue that the Plaintiffs have not alleged an intimate human relationship

in which the association was a fundamental element of liberty nor have they alleged associations

formed to engage in protected First Amendment activities, including religion and speech.  (Doc.

87, p. 25).  We concur with the Defendants.  As the Defendants argue, in our case, the Plaintiffs

simply allege that the City Defendants retaliated against them for having a predominantly

minority customer base and for transacting bushiness with minorities.   This is not an association

based on intimate human relationships nor is it an association to engage in religion or speech.

Rather, it is purely a commercial association which has not been formed to engage in any

protected First Amendment activities.  Thus, we agree with the Defendants that the Plaintiffs

have not stated a First Amendment retaliation claim, and we shall grant their Rule 12(c) Motion

with respect to this claim.

### 5. *Monell* Claim

The Defendants argue that the Defendant City of Wilkes-Barre is entitled to the entry of summary judgment since the Plaintiffs have not established a viable *Monell* claim against it. They state that the Plaintiffs have not offered any evidence that the City of Wilkes-Barre had any policy or custom that caused their alleged First Amendment violations.[35]  (Doc. 87, p. 27 & Doc. 105, p. 20 ).

When a claim against a municipality or governmental entity such as the Defendant City is based on § 1983, the entity can only be liable when the alleged constitutional violation implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).  A governmental custom for purposes of § 1983 is defined as "such practices of state officials...[as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law."  *Id.* at 691.  Custom can be shown by evidence of knowledge and acquiescence by high-level policy-makers.  *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).  The court must then inquire "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S.

---

[35] Count Two asserts a claim of municipal liability as against Defendant City of Wilkes-Barre.  The Plaintiffs' evidence with respect to Count Two of the Amended Complaint is not sufficient to establish any policies or practices issued by the City to drive out minorities from Wilkes-Barre, which led to the alleged violation of the Plaintiffs' constitutional rights.  The Plaintiffs allege that Wilkes-Barre had a custom and policy to discourage businesses in Wilkes-Barre and Luzerne county from serving Black and Latinos and scape-goating such businesses for the Defendants' failure to adequately police the City and maintain proper law enforcement, and that this was in furtherance of an official policy to prevent Black and Latino people from inhabiting and spending time in Wilkes-Barre and Luzerne county.  (Doc. 37, ¶'s 70.-71.).

378, 385 (1989).  The policy must be the "moving force" behind the constitutional violation.

*Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993) (citing

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion)).

In this case, with respect to the Plaintiffs' § 1983 claim against the city of Wilkes-Barre,

the Plaintiffs allege in their complaint that "[t]he Defendants' actions were done in retaliation

against the Plaintiffs for welcoming Black and Latino persons as patrons at their establishments

and were done as part of a custom or policy designed to drive such persons out of Wilkes-Barre

and the neighboring communities... ."  (Doc. 37, ¶ 84.).  The Plaintiffs also allege that the

individual Defendants had final authority to establish policy with regard to the closing of Desi's

Pizza. (Doc. 104, p. 16).

"A plaintiff must identify the challenged policy, attribute it to the city itself, and show a

causal link between the execution of the policy and injuries suffered." *Losch v. Borough of

Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).  The law is clear that liability will not be imposed

under § 1983 on a *respondeat superior* or vicarious liability theory.   *See Colburn v. Upper

Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991).

"Policy is made when a 'decision maker possess[ing] final authority to establish municipal

policy with respect to the action issues an official proclamation, policy or edict.  A course of

conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of

state officials [are] so permanent and well settled' as to virtually constitute law." *Beck v. City of

Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d

1469, 1480 (3d Cir. 1990)) (Citations omitted).

The Court in *Stoneking v. Bradford Area School District*, 882 F.2d 720, 725 (3d Cir. 1989), held that liability for state officials can arise "from their policies maintained in deliberate indifference to action taken by their subordinates."   According to *Stoneking*, "a plaintiff must do more than show the defendant could have averted her injury and failed to do so.  In order to establish liability a plaintiff must demonstrate both that the defendant's policy, practice, or custom played an affirmative role in bringing about the [harm] and that the defendant acted with deliberate indifference to that [harm].  In order to establish deliberate indifference on the part of the defendant, 'something more culpable [must be shown] than a negligent failure to recognize [a] high risk of harm' to plaintiffs."  *Id.; Black by Black v. Indiana Area School District*, 985 F.2d 707, 712-13 (3d Cir. 1993) (quoting *Colburn*, 946 F.2d at 1025).

The Defendants contend that there is no evidence that any of the Defendants had a racial motive or that they retaliated against the Plaintiffs, and that they are entitled to judgment as a matter of law on the Plaintiffs' § 1983 claim under a policy, practice, or custom theory of liability.  (Doc. 87, p. 27 & Doc. 105, p. 20 ).  The Defendants argue that there is no evidence that any actions they took were for any other reason than their response to multiple complaints and Pennsylvania LCB citations issued to Desi's Pizza.  (Doc. 105, p. 18).  The Defendants state that they did not retaliate against the Plaintiffs for welcoming minorities as customers into their establishment.  (*Id.*).  Further, in ¶ 25. of the Defendants' SMF, the Defendants state that  the Plaintiffs cannot prove they had a custom or policy to drive minorities out of Wilkes-Barre. (Doc. 69, p. 7, ¶ 25.).

The Plaintiffs point to their response to ¶ 25. of the Defendants ' SMF and their citation to evidence which they contend shows the existence of such a policy.  (Doc. 104, p. 16).  The Plaintiffs also state that the custom or policy requirement is met since key policy makers actively participated in the actions against the Plaintiffs.  (*Id*.).  The Plaintiffs point to Defendant Chief George's testimony that he, on behalf of the City, requested District Attorney Lupas to initiate the proceeding against Desi's Pizza in the CCP, and that he suggested this action to Defendant Mayor McGroarty.  (*Id*.).  The Plaintiffs also state that District Attorney Lupas then made the decision to proceed with the complaint in the CCP against Desi's Pizza.  (*Id*.).  The Plaintiffs sum up their argument by stating that based on the direct involvement of the officials with final policy making authority, i.e. Chief George and District Attorney Lupas, they had adequately shown that a custom or policy existed to drive Black and Latino persons out of Wilkes-Barre and neighboring communities.   (*Id*. & Doc. 37, ¶ 84.).

The Defendants point to their evidence which shows that they did not act with any racial motivation or bias in commencing state court action to close Desi's Pizza as a common nuisance.  (Doc. 87, p. 26).  The Defendants argue that Mayor McGroarty and District Attorney Lupas did not have any knowledge of the racial make up of Desi's Pizza's clientele, and that Chief George could not testify as to the racial nature or mixture of the customers.  (*Id*.).  The Defendants also state that the only evidence in the record is that the racial make up of Wilkes-Barre has not changed over the past 20 years.  (Doc. 87, p. 8 & Doc. 69, p. 6, ¶19.).  The Defendants refer to the statements made in the Depositions of Mayor McGroarty and Chief George, which indicate that neither individual noticed a change in the racial demographic of

Wilkes-Barre during the 1990s.  (Doc. 80, Ex. 4, p. 27 & Ex. 7, pp. 94-95).  The Defendants

further state that none of the Defendants had a custom or policy to drive out minorities from

Wilkes-Barre or the surrounding communities.  (Doc. 80, Ex. 4, 299).

The Defendants state that the Plaintiffs admit that the Defendants did not have a custom

or policy to drive out minorities from Wilkes-Barre or the surrounding communities.  ((Doc. 80,

Ex. 3, pp. 103-04).  Defendants state that Plaintiffs did not hear any of the Defendants say that

they desired to drive out minorities form Wilkes-Barre or the surrounding communities.  (*Id*. at

72).

We find that the Plaintiffs do not submit any evidence that the City  had an official policy

or custom adopted by a final decision maker to drive out minorities from the City and

neighboring communities.  We find that the Defendants have submitted evidence that the City

did not have such a policy.  We disagree with the Plaintiffs that the requirement of showing a

custom or policy is satisfied by reason of the active participation of the key policy makers in the

state court action against Desi's Pizza  (Doc. 104, p. 16), and find that the City can only be held

liable under § 1983 where it is shown that it caused the violation of the Plaintiffs' Constitutional

rights.

A municipality cannot be responsible for damages under Section 1983, *(i.e.* solely

because of actions by its officials), *Monell v. Dept. of Soc. Servs., New York City*, 436 U.S. 658,

694-95 (1978), and "can be found liable under § 1983 only where the municipality *itself* causes

the constitutional violation at issue." *City of Canton v. Harris*, 4889 U.S. 378, 385 (1989).  We

must review claims of municipal liability "independently of the Section 1983 claims against the

individual Defendants." *Kniepp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996); *Fagan v. City of Vineland*, 22 F.3d 1283, 1294 (3d Cir. 1994).

A plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the officials come into contact. *City of Canton*, 489 U.S. at 388. This typically requires proof of a pattern of underlying constitutional violations. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Although it is possible, proving deliberate indifference in the absence of such a pattern is a difficult task. *See id.* There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton*, 489 U.S. at 385, 109 S.Ct. 1197).

A municipality such as Defendant City of Wilkes-Barre can only be liable for a constitutional deprivation that is directly caused by a municipal policy, custom or practice. To prevail, the Plaintiff must identify a municipal policy or custom that reflects a conscious choice of policymaking officials that amounts to deliberate indifference to the rights of the people with whom they come into contact. *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004); *McCracken v. Freed*, 2006 WL 83452, at * 3 (E.D. Pa. January 6, 2006).

We find that the Plaintiffs are attempting to hold the City liable on the basis of vicarious liability for the alleged actions of the Police Chief and District Attorney.[36]  However, this is not an acceptable basis to hold the City liable on the Plaintiffs' *Monell* claim. We find that the

---

[36]  We also agree with the Defendants that the alleged racial comments the neighbors of Desi's Pizza made regarding its clientele, and the alleged desire of the neighbors to get rid of Desi's Pizza's minority patrons from their community and neighborhood, certainly cannot be attributed to the City Defendants.  (Doc. 87, pp. 15-16).

Plaintiffs do not point to any evidence that the City had a policy or custom that amounted to deliberate indifference to the Constitutional rights of its citizens.  The evidence the Plaintiff cites merely shows that Chief George and District Attorney Lupas made decisions to proceed to enjoin Desi's Pizza from operating due to the amount of crime taking place in and around Desi's Pizza.  (Doc. 80, Ex. 4, 178-80 & Doc. 80, Ex. 6, p. 33).

Nor have the Plaintiffs shown that the City was aware of such incidents in the past.  Additionally, the Plaintiffs have not shown that the City had a policy that played an affirmative role in bringing about the harm they claimed to have been suffered and that the City  acted with deliberate indifference to that harm.  Therefore, we find that the Defendant City of Wilkes-Barre  is entitled to summary judgment with respect to the Plaintiffs'  *Monell* claim (Count Two).

### D.  State Law Claims

In Count Five, the Plaintiffs assert state law claims for abuse of process, tortious interference with business relationships, trade disparagement and defamation.  (Doc. 37, ¶ 92.).  The Defendants initially argue that if the Court finds all of the Plaintiffs' federal claims must be dismissed, as they claim, then the Plaintiffs' state law claims should be dismissed for lack of pendent jurisdiction.  (Doc. 87, p. 38).

However, since the Court finds that the Plaintiffs' federal claim under the equal protection clause (Count One) against the Defendants will proceed, this Court may exercise jurisdiction over Plaintiffs' pendent state claims contained in Count Five of their Amended Complaint.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  Thus, since the Plaintiffs' § 1983 equal protection claim against the Defendants, over which we have original jurisdiction, is going

to proceed, the Court may exercise supplemental jurisdiction over Plaintiffs' Pennsylvania State Law claims against the Defendants. *See* 28 U.S.C. § 1367(c)(3).[37]

### 1. State Law Claims Against the City of Wilkes-Barre

The Defendants also argue that the Defendant City of Wilkes-Barre is entitled to governmental immunity for all of the Plaintiffs' state law claims under 42 Pa. C.S.A. § 8541. (Doc. 87, p. 38). We do not find that the Plaintiffs' brief addresses this argument. (Doc. 104).

The Defendants have  moved to dismiss the state law claims contained in Count Five of the Amended Complaint as against Wilkes-Barre. (Doc. 87, p. 38). The Defendants argue that these claims should be dismissed since Wilkes-Barre is immune from such claims under state law. The Defendants rely upon the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. § 8541, *et seq.* (*Id.*). As stated, we do not find any mention of the Defendants' argument in the Plaintiffs' Brief, Doc. 104. Thus, we deem the Plaintiffs as not opposing the Defendants' argument that the Defendant City of Wilkes-Barre is immune from their state law claims contained in Count Five. Therefore, since the Plaintiffs have not opposed the immunity issue with respect to their state law claims against Defendant Wilkes-Barre, and since we agree with the Defendants for their reasons contained in their Brief (Doc. 87, p. 38),[38]

---

[37] This Court has jurisdiction over the remaining federal equal protection claim under 28 U.S.C. § 1331 and § 1343(a). It is appropriate for this Court to exercise supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. §1367(a) if any of the federal claims under § 1983 remain. Of course, the Plaintiffs must properly plead such state law claims.

[38] The PSTCA, 42 Pa.C.S.A. §§ 8541, *et seq.*, provides immunity to local governmental agencies to the extent that they are subject to civil damages as a result of an "injury to person or property caused by acts of the employee which are within the scope of his office or duties." 42 Pa.C.S.A. § 8545. There is a "willful misconduct" exception to immunity under the PSTCA. 42 Pa.C.S.A. § 8550.

without further discussion, we shall dismiss the state law claims in  Count Five as against the

Defendant city of Wilkes-Barre.

### 2.  State Law Claims against the Remaining Defendants

The Defendants argue that the Plaintiffs' state law claims against the remaining

Defendants, Mayor McGroarty and Chief George, must also be dismissed since the Plaintiffs

failed to state such claims against them.  (Doc. 87, pp. 38-42).  Again, we do not find that the

Plaintiffs' brief addresses this argument.

The Defendants argue that the Plaintiffs have not stated a state law claim for abuse of

process.  Initially, we read the Plaintiffs' Amended Complaint as only asserting a state law claim

of abuse of process.  (Doc. 37, ¶ 92.).  We do not read Count Five as also asserting an abuse of

process claim under § 1983.

 The elements of a state law abuse of process claim were recently addressed by this

Court in *Gleeson v. Robson*, 2005 WL 1210948, * 29 (M.D. Pa. May 6, 2005):

> The gist of an action for abuse of process is the improper use of
> process *after* it has been issued, that is, a perversion of it.  An abuse
> is where the party employs it for some unlawful object, not the
> purpose which it is intended by the law to effect; in other words, a
> perversion of it . . .  abuse of civil [ or criminal ] process is concerned
> with a perversion of a process *after* it is issued.  *McGee v. Feege*,
> 517 Pa. 247, 535 A.2d 1020, 1023 (Pa. 1987), (Citations omitted)
> (emphasis added).  In order to state a claim for abuse of process,
> the plaintiff must allege that the defendant: "(1) used a legal process
> against the plaintiff, (2) primarily to accomplish a purpose for
> which the process was not designated, and (3) h arm has been caused

to the plaintiff." *Douris v. Schweiker*, 229 F.Supp.2d 391, 404
(E.D. Pa. 2002). "This requires that the plaintiff offer some proof of a
'definite act or threat not authorized by the process, or aimed at an
objective not legitimate in the use of the process.'" *Godshalk v.
Borough of Bangor*, Civ. A. No. 03-1465, 2004 WL 999546, at * 12
(E.D. Pa. May 5, 2004) (Citation omitted). Some "examples of actions
that are recoverable under the abuse of process tort are 'extortion
by means of attachment, execution or garnishment, and blackmail
by means of arrest or criminal prosecution.'" *Id.* at * 13 (Citation
omitted). " 'There is no cause of action for abuse of process if the
claimant, even with bad intentions, merely carries out the process to
its authorized conclusion.' " *Id.* at * 14; *accord Douris*, 229 F.Supp.2d
at 404. "That judicial process was initiated with a bad motive is not
enough; an allegation of coercive use of the process is required."
*Internet Billions Domain v. Venetian Casino Resort, LLC,* NO. 01CV5417,
2002 WL 1610032, at * 3 (E.D. Pa. May 31, 2002).

This claim involves a perversion of the civil process after it is issued. *See Rosen v. Am.
Bank of Rolla*, 627 A. 2d 190, 192 (Pa. Super. 1993). In our case, as the Defendants argue, the
Plaintiffs allege that the Defendants commenced the civil action against them in the CCP in
order to shut down Desi's Pizza. They seemingly claim that Defendants perverted the civil
process by selecting Desi's based on its predominantly Black and Latino customers.

We agree with the Defendants that, while the Plaintiffs may have alleged improper
motive in their pleading, there is no allegation of coercive use of process. We also agree with
the Defendants since the Plaintiffs lost in the state courts, the Plaintiffs cannot satisfy the

required element under 42 Pa CSA § 8351, that the proceeding terminated in their favor.[39]

Therefore, we shall grant the Defendants' Rule 12(c) Motion with respect to Count Five, state

law abuse of process claim.

We also agree with the Defendants that they are entitled to Judgment on the Pleadings

with respect to the Plaintiffs' state law claims for tortious interference, trade disparagement and

defamation.

As the Defendants state (Doc. 87, p. 39), in order to prevail on a claim of interference

with contractual relations, the Plaintiffs must show that the Defendants intentionally induced or

intentionally caused a third person not to perform a contract with the Plaintiffs.   *Restatement

(Second) of Torts* § 766; *KBT Corp., Inc., v. Ceridion Corp.*, 966 F.Supp. 369, 376 (E.D. Pa.

1997). *See also Strickland v. Univ. of Scranton*, 700 A. 2d 979, 985 (Pa. Super. 1997).

Underlying such a claim is the existence of a contract or a prospective contractual relation

between the stated third parties and the Plaintiffs.  *KBT Corp.*, 966 F.Supp. at 376.  We agree

with the Defendants that the Plaintiffs have not  established that the Defendants intentionally

and improperly interfered with the performance of any contract between themselves and a third

party.  We will grant the Defendants' Rule 12(c) Motion with respect to the Plaintiffs' claim for

tortuous interference with business relationships.

In order to state a claim for commercial or trade disparagement , the following elements

are required:

---

[39]As Defendants correctly note, a claim for malicious prosecution requires that the proceedings terminated favorably for the accused.  In *Backof v. New Jersey State Police*, 2004 WL 260779, at *3, n. 7  (3d Cir. Feb. 13, 2004), the Court noted that the Plaintiff must demonstrate that he/she is actually innocent of the charged crime.

(1) the state is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Neurotron Inc. V. Medical Serv. Assoc. Of Pa., Inc.*, 254 F.3d 444, 448-49 (3d Cir. 2001).

We agree with the Defendants (Doc. 87, pp. 40-41), and find that the Plaintiffs have not shown any evidence that Defendants did or said anything to disparage Desi's Pizza.  The Defendants also point to the testimony of George and McGroarty who stated that the Plaintiffs have good wares.  (Doc. 80, Ex. 4, p. 150 & Ex. 7, p. 71).

The Court in *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d. Cir. 2001), stated:

Under Pennsylvania law, a defamation plaintiff bears the burden to show (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, and (5) the understanding by the recipient of it as intended to be applied to the plaintiff.  42 Pa.C.S.A. § 8343(a).

_____The Defendants argue that the Plaintiffs have failed to prove a cause of action for defamation.  We agree with the Defendants and do not find that the Plaintiffs' Brief points to any alleged comments at issue which are  defamatory in nature.

Moreover, it is the Plaintiffs' burden to prove the elements of a defamation claim.  As the Defendants note, the Plaintiffs have not produced any evidence that they made defamatory statements, to whom these statement were  allegedly made, and that harm was caused to them from the statements.  We find, as the Defendants state, this lack of evidence to be legally insufficient to prove the defamatory character of any alleged comments made by the

Defendants against the Plaintiffs.[40]

Thus, we shall grant the Defendants' Rule 12(c) Motion with respect to Count Five

defamation and trade disparagement.[41]  *See Feingold v. Hill*, 44 Pa. D. & C. 3d 610, 619-620

(1986) (Citations omitted); *Tucker*, 237 F.3d 275 (3d Cir. 2001), *cert denied,* 122 S.Ct. 442.

Based on the foregoing, we shall grant the Defendants' Rule 12(c) Motion with respect to

Count Five in its entirety.

### E.  Immunity

Initially, Defendants state that the Plaintiffs' claims against the individual Defendants, i.e.

Mayor McGroarty and Police Chief George, in their official capacities must be dismissed

because they are the same as the claims against the Defendant City. (Doc. 87, pp. 35-36).

Plaintiffs, in their Brief (Doc. 104, pp. 12-13), do not address the issue of whether their claims

against the individual Defendants in their official capacities must be dismissed.

We agree with the Defendants, and find that to the extent that the Plaintiffs are deemed

as suing Defendants Mayor McGroarty and Chief George in their official capacities as the City of

Wilkes-Barre Mayor and the Police Chief, respectively,  *i.e.* alleging that these Defendants were

---

[40]  We also note that the Plaintiffs' defamation state law cause of action incorporates by reference the allegations of the personal involvement of the individual Defendants, Mayor McGroarty  and Chief George in ¶'s 42.- 48. of the Amended Complaint, including their comments made in a press release, at a town meeting, and in a TV broadcast.  (Doc. 37).   However, as stated, we do not find that the Plaintiffs' Brief (Doc. 104) specifically addresses the   state law claims and the evidence against the individual Defendants with respect to these claims. The Plaintiffs' Brief does not point to any evidence as to the defamatory nature and character of the comments.

[41]  Under PA law, truth is an affirmative defense to a defamation claim.  *See Tucker*, 237 F.3d at 281 ; 42 Pa. C.S.A.  § 8343(b)(1).  To the extent that the CCP found that Desi's Pizza was a nuisance bar, based on the number and nature of complaints it found were made against Desi's Pizza (Doc. 36, p. 7), the Defendants may have a viable defense to the defamation claim against them if this claim were to proceed.

acting within the scope of their employment as City officials (Doc. 37, ¶'s 68.-72.), the Plaintiffs' damages claim against them in their official capacities should be dismissed. *See Carlton v. City of Phila.*, 2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004) ("actions against government employees in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent'") (Citation omitted); *Douris v. Schweiker*, 229 F.Supp2d 391, 400 (E.D. Pa. 2002); *Dill v. Com. of PA,* 3F.Supp.2d 583, 587 (E.D. Pa. 1998).

The Plaintiffs' claims against the individual Defendant City officials under § 1983 in their official capacities are, in effect, suits against the Defendant City.[42]  Since the City has been named as a Defendant herein, we see no need for official capacity claims against Mayor McGroarty and Chief George.  *See Kenny v. Whitpain Twp.*, 1996 WL 445352, at *2 (E.D. Pa. Aug. 6, 1996).  Thus, we shall grant the Defendants' motion as a Rule 12(c) Motion with respect to the Plaintiffs' damages claim against Defendants  Mayor McGroarty and Chief George in their official capacities.[43]

---

[42]In fact, in their request for damages against the  Defendants in their Amended Complaint, Plaintiffs seek compensatory  damages against all Defendants and punitive damages against the  individual Defendants. (Doc. 37, p. 14, Wherefore Clause following ¶ 94.).

[43]  As stated above, the Plaintiffs seek punitive damages as against only the individual Defendants.  (Doc. 37, p. 14).  The Plaintiffs correctly do not seek punitive damages as against the City Defendant.  *See Carlton*, 2004 WL 633279, at *2.  The Plaintiffs are statutorily precluded from recovering punitive damages against local governmental agencies like the City of Wilkes-Barre  but not against the individual Defendants.
The Supreme Court has determined that, absent a statute to the contrary,  punitive damages cannot be awarded against a government entity. *City of Newport  v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  However, this preclusion of a punitive damages remedy does not apply to the individual defendants. *Smith v. Wade*, 461 U.S. 30, 35-36 (1983). In *Smith*, the Court held that punitive damages may be recovered from individual defendants in certain §1983 cases. *Id.*

### 1. Absolute Immunity

The Defendants argue that they are entitled to absolute immunity from this action as it relates to actions which are legislative in nature.  (Doc. 87, p. 36).  The Plaintiffs argue that Defendants Chief George and Mayor McGroarty are not legislators, and therefore absolute immunity afforded to legislators is not applicable to these Defendants.  (Doc. 104, p. 12).

The Amended Complaint as against all of the named individual Defendants indicates that they are being sued in their official and individual capacities.  (Doc. 37,  ¶'s 68.-72.).  The Defendants seemingly contend that their undisputed actions in this case were discretionary, policymaking decisions made based on complaints and citations against Desi's Pizza, and as such, they are immune from the Plaintiffs' § 1983 action under absolute legislative immunity.

This Court in *Brominski v. County of Luzerne*, 289 F. Supp. 2d 591, 593-94 (M.D. Pa. 2003), stated as follows:

> Legislative immunity, an absolute immunity, can be invoked when officials' actions are legislative in nature.  *Gallas v. Supreme Court*, 211 F.3d 760, 773 (3d Cir. 2000).  In determining whether officials are entitled to absolute legislative immunity, "we must focus on the nature of the official's action rather than the official's motives or the title of his or her office."  *Id.  See also, Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) ("Whether an act is legislative turns on the nature of the act, rather than n the motive or intent of the official performing it.")

> "Individuals who are not legislators but whose acts have a
> substantial legislative nexus are . . .  imbued with this
> absolute legislative immunity."  *Hughes v. Lipscher*,
> 852 F.Supp. 293, 296 (D.N.J. 1994) (citing *Gravel v.*
> *United States*, 408 U.S. 606, 92 S.Ct. 2614 (1972);
> *Eastland v. United States Servicemen's Fund*, 421 U.S.
> 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975)).  Specifically,
> when such officials' actions are both substantively and
> procedurally legislative in nature, the officials must be
> dismissed from the action.  *Gallas*, 211 F.3d at 775-77.

The Court in *Ballas v. City of Reading*, 168 F. Supp. 2d 398, 402 (E. D. Pa. 2001), further

stated that:

> Similar to federal and state legislators, local legislators are
> absolutely immune from liability from their legislative
> activities.  *Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118
> S.Ct. 966, 140 L.Ed.2d 79 (1998).  To qualify as legislative,
> the act in question must be both substantively and
> procedurally legislative in nature.  *In re Montgomery County*,
> 215 F.3d 367, 376 (3d Cir. 2000).  An act is substantively
> legislative where it involves "policy-making of a general
> purpose" or "line-drawing."  *Id.* (quoting *Carver v. Foerster*,
> 102 F.3d 96, 100 (3d Cir. 1996)).  An act is procedurally
> legislative if it is undertaken "by means of established
> legislative procedures."  *Id.*

In our case, we agree with the Plaintiffs and find that the actions of the individual

Defendants were not legislative in nature.  Therefore, the Defendants are not entitled to

absolute immunity.

### 2. Qualified Immunity

Initially, the Plaintiffs and the Defendants agree that public officials are entitled to qualified immunity and are, thus, shielded from civil damages from their conduct within the scope of their official duties, unless their conduct clearly violated constitutional or statutory rights and they would have reasonably been aware of that violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). (Docs. 87, pp. 36-37 & Doc. 104, p. 12). Since we have determined that the Plaintiffs have withstood the review of their § 1983 equal protection claim for purposes of the Defendants' Motion for Summary Judgment, the only issue is whether the individual Defendants would have reasonably been aware of the alleged violations.

It is clear that the Plaintiffs allege that these individual Defendants were aware that they were improperly trying to shut down its establishment, Desi's Pizza, based on its minority clientele. In fact, the Plaintiffs have alleged that the individual Defendants acted to shut down Desi's Pizza's operations based on the race of its clientele and the complaints of its neighbors, that the Defendants were responsible for its closure, and that they should have known that this conduct violated their right to be treated equally. (Doc. 104, pp. 13-14). The issue of the "reasonableness" of the individual's understanding of this violation requires more inquiry than can be provided in a review of the Complaint and, as such, is an issue which we can be decided under the framework of F.R.C.P. 56.

Since we are granting of the Defendants' Motion for Summary Judgment with respect to the Plaintiffs' procedural due process and substantive due process claims, we shall not address the Defendants' contention that they are entitled to qualified immunity on these claims.

The Defendants also contend that they are entitled to qualified immunity on the Plaintiffs' equal protection claim.  Although Defendants Mayor McGroarty and Chief George did not file the complaint in the CCP, were not parties to it, and did not play a role in the issuance of the CCP's March 2001 Decision to enjoin Desi's Pizza from operating for one year (Doc. 87, p. 6), the Plaintiffs' evidence has shown sufficient personal involvement in Desi's Pizza's closure with respect to all of the Defendants to preclude the protection of qualified immunity to the Defendants on the equal protection claim.

As we have previously discussed, we have found that material factual disputes exist as to whether the Defendants treated all establishments similarly situated to Desi's alike and whether the Defendants' actions were objectively reasonable.   Since we find that disputes of material fact exist as to   Defendants' motivation in seeking to close Plaintiffs' establishment, i.e. whether the Defendants acted based on the racial make up of Desi's Pizza's clientele, we shall deny Defendants' motion with respect to its request that Chief George and Mayor McGroarty be afforded qualified immunity.

In *Bennett v. Murphy*, 174 F.3d 133, 136-137 (3d Cir. 2001), the Court stated:

> Once if is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established.  That is, in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited?  The focus in this step is solely upon the law.  If it would not have been clear to a reasonable officer *what the law required* under the facts alleged, he is

entitled to qualified immunity.  If the requirements of the
law would have been clear, the officer must stand trial.

We have found a factual dispute exists as to whether it was clear to the Defendants what the law required with respect to the Plaintiffs' equal protection  claim.  As discussed, under the facts presented by the Plaintiffs,  including the historical animosity  by the City  officials and its neighbors to their establishment, Desi's Pizza, and its alleged predominantly minority clientele, a factual dispute exists as to whether reasonable officials would have understood that their actions of trying to shut down Desi's were prohibited.  Plaintiffs have  shown that Chief George lived near Desi's Pizza and interacted with its neighbors.  They have shown that this Defendant should have known that Desi's Pizza clientele was predominantly minority and that the neighbors of Desi's Pizza were predominantly white.  In the years 2001 and 2002, the Plaintiffs have shown that the neighbors of Desi's Pizza complained about it, voiced dislike for its clientele, and that this conduct was, in part, due to the race of its clientele.  The Plaintiffs have also shown, for present purposes, that other similarly situated establishments with a high volume of offenses and arrests, such as Banana Joe's, with patrons  that were predominantly white, had no actions taken by City officials to shut them down.  (Doc. 104, p. 14 & attached charts).  The Plaintiffs have sufficiently shown that Chief  George, on the police force since 1979, knew or should have known that the only bars which the City tried to close were the ones with minority clientele.  The Plaintiffs have also shown that they complained to Defendant Chief George (complaints of which the Mayor was also aware) that they were being singled out due to the racial make-up of their customers.  The Plaintiffs have also sufficiently shown that the actions

the Defendants took to shut down Desi's Pizza was to appease the citizens.[44]

As the Third Circuit stated in *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir.

2006):

> Although qualified immunity is a question of law determined by the Court,
> when qualified immunity depends on disputed issues of fact, those issues
> must be determined by the jury. *See Johnson v. Jones*, 515 U.S. 304, 313,
> 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity
> may turn on
> disputed issues of fact); *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995)
> ("While the qualified immunity defense is frequently determined by courts
> as a matter of law, a jury should decide disputed factual issues relevant to
> that determination."). Motive is a question of fact that must be decided by
> the jury, which has the opportunity to hear the explanations of both
> parties in the courtroom and observe their demeanor. *See Mitchell v.
> Forsyth*, 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)
> (improper intent is a pure question of fact); *Walker v. Horn*, 286 F.3d 705,
> 710 (3d Cir. 2002).

It was clearly established under the Fourteenth Amendment Equal Protection Clause that

public officials may not selectively pursue nuisance complaints and take enforcement actions

against an establishment that has a predominantly minority clientele when they do not equally

pursue such complaints against similarly situated establishments that have predominantly white

clientele.  It was also clearly established that unequal enforcement of the laws against an

---

[44] The Wilkes-Barre Defendants move to dismiss this action as against them based  on qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Third Circuit recently stated in *Gilles v. Davis*, C.A. No. 04-2542, (3d Cir. 10-25-05), 427 F.3d 197 (3d Cir. 2005), that the test, in part, to determine if a police officer is entitled to qualified immunity for false arrest and malicious prosecution claims is whether it would have been clear to a reasonable officer in the arresting officer's position that there was no probable cause to make the arrest.  Slip op. pp. 13-14.  The *Gilles* Court cited *Paff v. Kaltenbach*, 204 F. 3d 425, 437 (3d Cir. 2000) ("If there are cases that would make it apparent to a reasonable officer in [the arresting officer's] position that probable cause was lacking, qualified immunity is not available.") (internal quotations omitted).  *Id*. p. 14.

Thus, as the Plaintiffs correctly stated (Doc. 104, p. 12), the Court first determines if the facts alleged, viewed in the light most favorable to the Plaintiff, show that the official's conduct violated a Constitutional right.  If the first hurdle is passed, then the Court inquires whether it would be clear to a reasonable official that his conduct was unlawful under the circumstances he faced.

establishment based on the race of its clientele, *i.e.* predominantly African-American and Latino, violated the Fourteenth Amendment.  We have found that disputed material facts exist as to whether the Plaintiffs' establishment was treated differently than other similarly situated establishment based on the race of Desi's Pizza's clientele.  We have found that the Plaintiffs have produced enough evidence to proceed to trial on their Fourteenth Amendment equal protection claim, and that the jury must decide if the Defendants acted with a motive to close the  Plaintiffs' establishments based on the race of their clientele.  (Doc. 104, pp. 1-5 & attached charts).

The *Monteiro* Court further stated "[w]hen a Constitutional violation depends on evidence of improper intent, it is sufficient for the Plaintiff to 'identify affirmative evidence from which a jury could find ... the pertinent motive,' in order to survive summary judgment on that issue."(Citation omitted).  *Monteiro*, 436 F.3d at 406.

The complaints of selective prosecution were made to the Defendants, and thus the requirements of the law were made clear to the Defendants.  The Plaintiffs have provided sufficient evidence that similarly situated bars with predominantly white customers with the same violations, arrests, and offenses were not shut down.  Thus, the Defendants are not entitled to qualified immunity with respect to the Plaintiffs' equal protection claim.[45]

---

[45]  The Third Circuit has held that, in applying *Harlow*'s objective test for qualified immunity, evidence of a Defendant's state of mind may be considered when motivation is an essential element of the § 1983 claim.  *Grant v. City of Pittsburgh*, 98 F.3d 116, 123 (3d Cir. 1996).  As the Plaintiffs recognize (Doc. 104, p. 13), motivation is an element to the Plaintiffs' equal protection claim since they have to show that differential treatment by the Defendants was based on impermissible considerations such as the race of Desi's Pizza clientele.  In this case, we have found factual disputes as to the individual Defendants' motives for taking the steps to close down the Plaintiffs' establishment.

**F. Damages**

The Defendants argue that all of the Plaintiffs' claims must be dismissed since the Plaintiffs have not incurred any damages.  (Doc. 87, pp. 42-44).  It is undisputed that the state court's injunction order prevented Desi's Pizza from operating for one year from March 2001, through  March 2002.  (Doc. 36, p. 7).  After the state court's injunction order expired, Desi's Pizza re-opened *sans* a Pennsylvania liquor license.  (*Id*. at 8).

The Defendants state that the Plaintiffs have not proved they suffered any damages as a result of the Defendants' actions.  (Doc. 87, pp. 42-43).  The Defendants assert that the Plaintiffs must prove actual damages for Constitutional violations, and that in our case, the Plaintiffs did not incur any damages.  (*Id*.).  The Defendants state that aside from their tax returns, the Plaintiffs have no evidence of damages.  The Defendants point to the deposition of Francis Desiderio in which he admitted that other than gross sales, they have no other evidence of damages to their businesses.  (Doc. 80, Ex. 1, pp. 257-258, 260-261).

The Defendants concede that following the closing of Desi's Pizza, the Plaintiffs' gross sales dropped, but they state that the Plaintiffs' adjusted net profits rose.  (App. Vol. III, pp. 6-10).[46]  In particular, the Defendants indicate that according to the Plaintiffs' tax returns, Desi's Pizza had a net operating loss every year prior to 2001, and in 2001, the year Desi's Pizza operation was enjoined, it lost less money than it lost in 2000.  (Doc. 80, Ex. 1, pp. 257-258, 260-261) (App. Vol. III, pp. 1494-1521, 1680, 1702) (Doc. 87, p. 43).

---

[46]  This exhibit, Defendants' Volume III, will be referred to as Vol. III instead of by document number because it was filed under seal by Order of the Court on October 13, 2005.  (Doc. 92).

The Plaintiffs argue that they can prove substantial damages.  (Doc. 104, p. 15).  The Plaintiffs acknowledge that the tax returns for the corporate Plaintiffs show only a loss of gross sales, however, they contend that loss of gross sales is recoverable as damages.  (Id.).   Plaintiffs cite to *KBT Corp., Inc.,* 966 F.Supp. at 375.  The Plaintiffs also note that their expert estimates Desi's in Wilkes-Barre suffered a loss of sales from 2001-2004 in excess of  $1.5 million, and in excess of $333,000 for Desi's in Dallas.  (*Id.*, n. 5).

The Plaintiffs also state that they can recover damages in a civil rights action for emotional distress they averred they suffered by witnessing the destruction of their reputations and businesses.  (Doc. 103, Declaration of Francis Desiderio, ¶'s 65.-70. & Declaration of Martin Desiderio, ¶'s 6.-7.).

The Plaintiffs further show economic loss in the nature of salary from the corporate Plaintiffs, as well as loss from food spoiling when Desi's Pizza was closed.  (Doc. 103, Declaration of Martin Desiderio, ¶'s 5., 8.-10.**).**

We agree with the Plaintiffs, for the reasons they state, that they have sufficiently shown damages with respect to their § 1983 equal protection claim.  In their amended pleading, the Plaintiffs aver that as a result of the Defendants' alleged conduct the income and business prospects of their establishments were severely damaged.  (Doc. 37, p. 10, ¶ 72.).

As this Court in *Padilla v. Miller*, 143 F. Supp. 2d 453, 475 (M.D. Pa. 1999), held, "[t]here is no right to damages other than nominal ones for a violation of a Constitutional right unless actual injury is proven."  (Citation omitted).  This Court further stated that "a damage reward in a § 1983 action must be designed 'to compensate injuries caused by the

[Constitutional ] deprivation ... '" (Citation omitted).  This Court then stated that "compensatory damages in a § 1983 action 'may include not only out-of pocket loss and other material harms, but also such injuries as 'impairment or reputation, personal humiliation, and mental anguish and suffering.''" (Citation omitted).  Expert testimony that the Plaintiffs suffered emotional distress is not required, but "there must be individualized proof of the fact of injury, its extent and its cause." *Id*.  (Citation omitted).

In the Plaintiffs' Brief,  they claim to have suffered considerable loss of sales at their establishments as well as emotional distress.  Based on *Padilla*, we find that the Plaintiffs have sufficiently established damages in this case.[47]

Since we are granting the Defendants' Motion for Summary Judgment with respect to the *Monell* claim against the Defendant City of Wilkes-Barre, we shall enter Judgment in favor of this Defendant.

## VII. Conclusion.

Based on the foregoing, we shall grant the Defendants' Motion for Judgment on the Pleadings  **(Doc. 68)** with respect to the claims in Count Two for statutory discrimination under §§ 1981 and 1982, civil conspiracy under § 1985(3), and First Amendment retaliation under §1983.  We shall grant the Defendants' Motion for Summary Judgment as to the *Monell* claim

---

[47]  It is clear  that a Plaintiff, who wins  only nominal damages in a § 1983 action, is still entitled to attorneys' fees as a prevailing party under the Civil Rights Attorney Fees Award Act, 42 U.S.C. § 1988(b).  *See Farrar v. Hobby*, 506 U.S. 103, 112 (1987).  However, when a  Plaintiff is awarded only nominal damages,  "the court should separate the analysis of 'prevailing party' status from the determination of whether Plaintiffs have earned merely a 'de minimis' or 'technical' victory.  506 U.S. at 115 (O'Connor, J., concurring.).   The latter inquiry goes to the reasonableness of the fee award, not the question of whether Plaintiffs have prevailed.  *Id*.; *Buss v. Quigg*, 2002 WL 31262060 at * 3 (E. D. Pa.).  Thus, in the present case, even if a jury only awards  Plaintiffs nominal damages they may still be entitled to  attorneys fees.

against the City of Wilkes-Barre.  We shall grant the Defendants' Motion for Summary Judgment

as to the Plaintiffs' procedural due process claim and substantive due process claim, Counts

Three and Four of their Amended Complaint.  (Doc. 37, pp. 12- 13).  We shall grant the

Defendants' Motion for Judgment on the Pleadings as to all of the Plaintiffs' state law claims

against the Defendants in Count Five.  (*Id*. at p. 13).  We will deny the Defendants' Motion for

Summary Judgment with respect to the Plaintiffs' § 1983 equal protection claim and claim for

§ 1988 attorney's fees, Counts One and Six.  (*Id*. at pp. 11, 14).

An appropriate Order and Judgment will follow.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: August 23, 2006**